[No. 28872. Department One. January 25, 1943.]

LETTIE E. STONE, *Appellant*, v. MACK STONE, *Respondent*.[1]

*E. A. Philbrick* and *Julia Waldrip Ker*, for appellant.

*Ralph L. J. Armstrong*, for respondent.

[1]Reported in 133 P. (2d) 526.

JEFFERS, J.—This action was instituted by Lettie E. Stone against her husband, Mack Stone, to obtain a decree of divorce on the ground of cruelty. Plaintiff asked that she be given the custody of the minor children, support money, and certain property. Defendant answered, denying the charges of cruelty, and by his cross-complaint alleged that plaintiff had been guilty of cruel conduct toward him, and that she was raising their children in accordance with the custom of a certain religious cult, whereby they were taught not to salute the American flag and other disloyal and un-American practices; also, that they were taught no respect for the American form of government, and were discouraged from being loyal to our country. Defendant asked that he be given a decree of divorce, the care and custody of the minor children, and that the court make distribution of the property.

The matter came on for hearing before the court, which thereafter made and entered findings of fact, conclusions of law, and a decree. The court found these parties were married in 1921, and have the following children: Maxine Stone, aged nineteen years; Tommie Stone, aged seventeen years; Sherman Stone, aged fifteen years; James Stone, aged five years; and Loralee Stone, aged two years. The court further found that defendant is a fit and proper person to have the care and custody of the children; that plaintiff is a fit and proper person morally to have the custody and control of the minor children, but she is a member of a fanatical organization with teachings entirely inimical to the rearing of children as American citizens; *that for this reason only she is not a fit and proper person to have the custody and control of the minor children.*

The court further found that plaintiff had been guilty of acts of cruelty toward defendant, rendering

his life burdensome; that the parties owned personal property consisting of household goods, gas station equipment, stock of merchandise and fixtures, garage tools, machinery and equipment, and an International truck, also real property consisting of the south half of lots 9 and 10, block 4, town of Viora (now Little-rock), in Thurston county, Washington; that defendant has a quick temper and must learn to control his temper with respect to rearing the children; that a reasonable attorney fee for plaintiff's attorney is seventy-five dollars.

From the above findings, the court concluded that defendant was entitled to an interlocutory decree of divorce, and entitled to the custody and control of all the children, subject to the right of visitation on the part of plaintiff, "provided that plaintiff shall not endeavor at any time to teach said children the principles of the beliefs of her organization"; and that defendant have the real estate hereinbefore described, together with all the personal property, except those items of household furniture and other personal property now in the possession of plaintiff. Judgment was entered in accordance with the conclusions, and from this judgment plaintiff has appealed.

Appellant states that the court erred in refusing appellant a decree and granting respondent a divorce; in depriving appellant of her children and according them to respondent; in depriving appellant of all the property accumulated by them during twenty-one years of married life; and in not making any provision for the support and maintenance of appellant.

Appellant is a member of "Jehovah's Witnesses," and apparently has been a member for some time. As such member, Mrs. Stone gives about five and three-quarters hours a week to the organization, distributing its literature from house to house, in which

work she is usually accompanied by James, the five year old son. It does not appear that, in doing this work, she neglects her home or her family; in fact, we think all the testimony is to the effect that she maintains a good home, and that all the children of school age have attended school regularly, and are above the average of children in that community. There is not one word of testimony tending to even hint that Mrs. Stone's morals are other than above reproach, or that she has not done all that any good mother would try to do to bring up her children to be good, law-abiding citizens, unless it be the influence exercised by her over them in getting them to accept the interpretation of the Bible made by Jehovah's Witnesses, particularly as such interpretation pertains to saluting our flag, and perhaps as to voting.

Mrs. Stone testified that there was nothing un-American taught by Jehovah's Witnesses; that it is a christian organization, founded on the Bible. Mrs. Stone, in answer to a direct question as to whether she had taught her children not to salute the flag, answered:

"A. They honor the flag, but they don't salute the flag. Some of the children do. The older one does. I pointed out to them what the Bible says about that."

She further stated:

"We will never tell our children to salute or not salute. We point out what the Bible says, and they take their own stand. We point out the stand the Bible takes."

Jehovah's Witnesses has existed since about 1878, and, as we understand it, its members' refusal to salute the flag is not because they do not honor the flag, but because of an honest conviction, based upon their interpretation of the Bible, that saluting the flag is making it an image of the power to which one looks for

salvation, and that to salute such an image ignores Almighty God, from whom alone salvation proceeds. Jehovah's Witnesses do not teach any violation of the laws of the state which are in harmony with God's laws, but, if the law of the state is in direct violation of God's law, they will obey God's law first and all the time.

There is no testimony that there has been any trouble at school because of the failure of the Stone children to salute the flag. Two of the older children do not salute the flag, while one of them does. The two younger children are not old enough to have any views on the question.

Respondent does not believe in the above doctrine, and there has been much quarreling and discord in the family as the result of this difference in opinion. These differences were brought to a climax when respondent told the oldest daughter, Maxine, who was about to go out and distribute some of the tracts or books of the organization, that she could stay at home and take care of the house, or take her clothes and go to town and make her own living. The daughter left, and Mrs. Stone went with her, apparently coming to Olympia, where she rents a small place and has the children with her.

There is testimony that Mr. Stone has been indifferent toward his children, and that he was not very considerate of Mrs. Stone at the time the last baby was born. It may be that this seeming indifference was in part due to the fact that Mr. Stone has worked away from home a good deal of the time. However, he seems to have provided fairly well for his family, considering his circumstances.

While there are other things which have occurred, which, combined with Mrs. Stone's religious belief, have brought about a condition because of which both

parties admit they can no longer live together as man and wife, Mrs. Stone's religious convictions and practices and the quarrels resulting therefrom have undoubtedly been the main cause of their trouble.

The property acquired by the parties during their married life consists of a four-room house located on the lots hereinbefore described; a gas station and small store, with accessories, tools, equipment, and merchandise, located on this same property; a half-ton truck, an arc welder, a cow, some household goods, and some wood. At the time of the trial, respondent still owed about two hundred fifty dollars on a gas pump and the arc welder. The probable value of all this property does not exceed twenty-five hundred dollars. Respondent testified that, after paying ten dollars on the pump, light bills of eight or nine dollars a month, grocery bills of about forty or fifty dollars a month, he had left about fifteen or twenty dollars.

We are of the opinion that the facts in this case justify the granting of an interlocutory decree of divorce to each of the parties on the ground of cruelty.

The serious question presented is whether or not the trial court was justified in awarding to respondent all of the children, especially the two younger ones, and awarding to respondent all the property except a few household belongings, because appellant is a member of Jehovah's Witnesses, whose teachings the court felt were inimical to the rearing of children as American citizens.

Appellant contends that, if she is deprived of her children and her property rights because of her religious beliefs, her constitutional rights have been invaded. She cites a number of cases discussing the question of the power of the court to deprive children of the privilege of attending school when, by reason of the teachings of Jehovah's Witnesses, they declined

to salute the flag, and whether such children could be classed as dependent or delinquent, and the question of whether a city ordinance requiring, as a condition precedent to the granting of a license to distribute periodicals, that a licensee salute the flag, was valid.

Respondent cites and very largely relies on the case of *Minersville School Dist. v. Gobitis,* 310 U. S. 586, 84 L. Ed. 1375, 60 S. Ct. 1010, which sustains the power of the state legislature to pass a law requiring school children to salute the flag.

The cited cases do not, in our opinion, reach the question here presented. The primary question here is the welfare of the children, especially the two younger children, and whether or not the court was justified in depriving appellant of their custody and control, and also her property rights, solely because the court believed that the teachings of Jehovah's Witnesses, to which organization the mother belonged, rendered her unfit to have such care and control.

The case of *Reynolds v. Rayborn,* 116 S. W. (2d) (Tex. Civ. App.) 836, is, in our opinion, the only case cited which really bears on the question here presented. In the cited case, the father belonged to Jehovah's Witnesses. A minor daughter had been committed to a home, for the reason that the court felt that the teachings of that organization were of such a character that the child should not be reared under such influence. The father appealed, and the opinion states:

"The flag is emblematic of the justice, greatness, and power of the United States—these, together, guarantee the political liberty of the citizen, but the flag is no less symbolic of the justice, greatness, and power of our country when they guarantee to the citizen freedom of conscience in religion—the right to worship his God according to the dictates of his conscience. Beyond

my comprehension are the vagaries of people who claim and accept the protection of their government in order to worship God according to the dictates of their conscience, but refuse to salute their country's flag in recognition of such protection. Yet, however, reprehensible to us such conduct may be, their constitutional right must be held sacred; when this ceases, religious freedom ceases.

"However much we may disagree with or disapprove their religious beliefs, the failure of appellant, because financially unable, to supply greater comfort and pleasure for his daughter, together with their refusal to salute the flag, do not constitute a sufficient cause to adjudge the father disqualified and unfitted to have the care, custody, and control of his minor daughter."

We think the reasoning of the above case applicable here.

We do not doubt the right of the state to suppress religious practices dangerous to morals, and presumably those also which are inimical to public safety, health, and good order, but, so far as appears from the testimony in this case, the teachings of Jehovah's Witnesses cannot, in our opinion, be classed in any one of these categories.

We cannot find in the record any testimony which would justify the court in finding that this mother is unfit to have the care and custody of her children, because of her religious beliefs, or that the children, if left with her, will be reared in an atmosphere of disloyalty to their country or its institutions.

While we hesitate to reverse the trial court in divorce actions, especially as to the custody and control of minor children, believing that, having seen and heard the witnesses, the trial court is better able than are we to determine what is best for the welfare of the children, however in this case the ground upon which the court's conclusions and judgment are based is not, in

our opinion, supported by the evidence and cannot be sustained.

The evidence as to the value of the property here involved is not very definite, nor is the testimony too definite as to how much respondent may be able to pay for the support and maintenance of Mrs. Stone and the children. However, if the amounts which we have concluded respondent should pay for such support are beyond his ability to pay, he may, of course, at any time present that matter to the court and have the decree modified.

We are of the opinion that appellant, under the facts of this case, is entitled to the care and custody of the children. We may say in this connection that it probably makes little difference who has the custody of the three oldest children, as the oldest girl is now self-supporting, one of the boys is with his grandmother, and the other boy indicated that he did not care to live with either his father or mother. However, we feel that the mother should have the care and custody of the two youngest children, one of whom is five years old and the other about two years, and that it would be better to have all the children placed under the care and custody of one parent. Respondent may have the right of visitation at any and all reasonable times, and the three oldest children may have the right to visit and be with their father so long as it shall not interfere with their school work. Respondent shall not molest or interfere with appellant in the home, nor shall either parent attempt to alienate any of the children from the other parent.

We are further of the opinion appellant should be accorded the home and household effects and the cow, and that respondent pay to her for the support of herself and the minor children the sum of forty dollars

per month, until the further order of the court, such payments to begin January 1, 1943. We do not feel it would be just to require, or that respondent would be able to pay to appellant, other than what might be termed a nominal sum for attorney's fees and costs in the lower court and this court, and we therefore are of the opinion that respondent should pay to appellant the sum of one hundred dollars as attorney's fees and costs in the lower court and in this court.

Respondent should have decreed to him the garage and store building, together with the fixtures and equipment used in connection therewith, and the truck; and he shall assume and pay all debts and liabilities of the community at this time existing.

The judgment of the trial court is reversed, with instructions to the trial court to enter findings, conclusions, and judgment in accordance herewith.

ROBINSON, MILLARD, STEINERT, and MALLERY, JJ., concur.