## SALVAGGIO v. BARNETT et vir.

### No. 12401.

Court of Civil Appeals of Texas. Galveston.

April 17, 1952.

Tom S. Williams, San Antonio, for appellant.

Cutrer & Cook, Houston, W. Lawrence Cook, Jr., Houston, of counsel, for appellees.

CODY, Justice.

This is a formal habeas corpus proceeding instituted by Mrs. Barnett, joined by her husband, against Lee Salvaggio, her former husband, seeking the custody of her daughter, Judy Suzzan Salvaggio, who was born August 14, 1948, of her former marriage with Mr. Salvaggio. The exclusive custody of the child was awarded to Mr. Salvaggio in the divorce proceedings by the 98th District Court of Travis County. There was no finding by the court in that action that the present Mrs. Barnett was not a fit person to have the custody of her daughter.

After the divorce Mr. Salvaggio moved to Houston and both he and his child lived with his parents until he married his present wife on April 6, 1951. In the meanwhile Mrs. Barnett married her present husband and thereafter instituted this suit in a Civil District Court of Harris County and from the judgment of the court awarding her custody of the child, based upon the finding of changed conditions, Mr. Salvaggio prosecutes this appeal. At his request the court filed conclusions of fact and law. Therefrom it was made to appear that at the time of the divorce Mrs. Barnett's situation, which forced her to work as a waitress in a restaurant in order to support herself, would not admit of the assumption by her of the care of her infant daughter nor permit her to give the child a mother's attention. It further appeared therefrom that since that time Mrs. Barnett has married her present husband and they have established a home and that she has recently become the mother of a son, the half-brother of Judy, and is now situated in all respects so that she can now take over the custody of Judy and lavish upon her all of the attention which a mother's love can inspire.

The court further found: "* * * During all the time Lee Salvaggio has had the custody of the child he has cared for her with kindness and attention, and has provided a home for the child and also has adequately provided for all her physical needs. Both Lee Salvaggio and his present wife are devoted to the child and have given it love and care. Lee Salvaggio has only the one child who lives with him and his wife in their own home separate and apart from that of Lee Salvaggio's parents. Lee Salvaggio is a printer by trade and earns $80.00 per week.

"Lee Salvaggio is a fit and proper person to have the custody of his child except that he and his present wife, because of their belief that the Bible requires it, propose to teach Judy Suzzan Salvaggio that it is wrong to salute the American Flag, and that it is wrong to celebrate and exchange gifts at Christmas and that it is wrong to kill others even in defense of the United

States. Lee Salvaggio did not formerly follow such beliefs and was in the late war during which time he was in several battles and saluted the flag.

## "Conclusions of Law

"The Court is of the opinion that conditions affecting the welfare of Judy Suzzan Salvaggio since the rendition of the decree of divorce have materially changed so that it is now to the best interests of said child that her natural mother, Betty James Barnett, should have the custody of said child. (The father of said child, Lee Salvaggio, should have the right to visit said child.) * * * The changes of condition affecting the welfare of such child include the change in the financial circumstances of Betty James Barnett and her ability to provide a suitable home for her child. However, in arriving at its conclusions, the Court is primarily influenced by the proposed teachings of Lee Salvaggio and his present wife with reference to saluting the flag, fighting in defense of the United States and celebration of Christmas. The Court judicially knows that the overwhelming majority of other children in this state and in the community where Judy Suzzan Salvaggio will reside and go to school will be taught to salute the American Flag, to defend the country against enemies, and will exchange gifts and celebrate Christmas. The Court concludes that such fact would produce problems and conflicts adversely affecting the welfare of such child. Without in any way infringing upon the right of Lee Salvaggio and his present wife to interpret the Bible as they see fit, the Court is of the opinion that as between the natural parents of such child, the best interests of the child would be served by her being placed in the custody of the parent who will rear her in the normal atmosphere of an American home."

Mr. Salvaggio, hereafter called appellant, predicates his appeal upon four points, which, in substance, present:

1. That the court's order depriving appellant of the custody of his child is illegal in that the changed conditions relied upon by the court for ordering the change of the custody to appellee relate primarily to the adoption by appellant of certain religious beliefs disapproved of by the court as being harmful to the child.

2. That the court's order is illegal in that it denies the father, having legal custody of his child, of the right to raise the child according to the tenets of his faith primarily because the court disapproves of the same as being bad for the child, contrary to the First and Fourteenth Amendments to the Constitution of the United States.

3. The matters and issues determined by the court are res adjudicata, having been determined by another court in a prior proceeding between the parties.

4. The court's finding that there has been a material change in the circumstances is without basis in fact and contrary to the undisputed evidence.

■ A district court, of course, has the power, in a divorce case, to award the custody of the child or children of the parents according to the best interest of the child or children. See Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946, 75 S.W. 368, 97 Am.St.Rep. 928. There is nothing in the holdings made in Tavares v. Tavares, Tex.Civ.App., Galveston, 207 S.W.2d 916, or in Greenlaw v. Dilworth, Tex.Com.App., 299 S.W. 875, which in any way limits the power of a court, where its jurisdiction has been properly invoked, to change the custody of the child upon a showing that changed conditions make it to the best interests of the child to have its custody changed. And, specifically, there is nothing in said holdings which affixes in a parent such a priority right of custody, after same has once been awarded such parent, that the right of custody can only be lost by such parent becoming an unfit or unsuitable person for the custody. It has been too frequently held that the court is justified in finding that it is for the best interest of a small female child to be awarded to its natural mother, to require citation of authorities to support such action as not being an abuse of the court's judicial discretion. The fact that the mother's situation at the time of the divorce did not admit of such an award, will not show as a mat-

ter of law that the court abused its discretion in changing the custody of the child after the mother's situation permitted that she assume the care of her daughter.

 In choosing between parents who are contending for the custody of the child, a magistrate has only such powers as the law has conferred upon him to determine whose custody would best promote the interest and welfare of the child. Under the American principle of separation of Church and State, the secular power is so shackled and restrained by our fundamental law that it is beyond the power of a court, in awarding the custody of the child, to prefer, as tending to promote the interest of the child or surround it with a more normal atmosphere, the religious views or teachings of either parent. See First Amendment to United States Constitution; Sections 4, 5 and 6, Article I, Bill of Rights of the State Constitution, Vernon's Ann. St.; West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; Reynolds v. Rayborn, Tex.Civ.App., 116 S.W.2d 836; Stone v. Stone, 16 Wash.2d 315, 133 P.2d 526; Cory v. Cory, 70 Cal.App.2d 563, 161 P. 2d 385. Section 6 of the Texas Bill of Rights, aforesaid, reads: "Sec. 6. All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. *No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion,* and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equally every religious denomination in the peaceable enjoyment of its own mode of public worship." (Emphasis supplied.) It is in no way contended that appellant's religious teachings to his child would be immoral or illegal, but merely that they would be unpopular.

However, insofar as the court's order giving the custody to the mother is based on his discretion that a mother's care and attention for a young female child is for that child's best interest, the court's order finds ample legal support.

The court committed no reversible error, and the judgment is ordered affirmed.