## KOVSKY et al. v. McNUTT.

### No. 6252.

Court of Civil Appeals of Texas. Amarillo.

Dec. 15, 1952.

Mayer & Mayer, Dallas, for appellants.

DeShazo & Hyde, Dallas, for appellee.

LUMPKIN, Justice.

On May 3, 1947, a divorce was granted the appellant, Emma Lou (McNutt) Kovsky, from the appellee, Charles H. McNutt, and custody of the couple's minor children, Laurie Lane McNutt, aged 5 years, and Charles Wayne McNutt, aged 3 years, was awarded to their mother. Later, the mother married the other appellant, Louis Kovsky, and afterwards the appellee, who had come into possession of the children, filed a motion to change their legal custody to him. On December 4, 1951, the trial court, after a hearing without a jury, made the following finding:

" * * * that the conditions affecting the welfare of Laurie Lane McNutt and Charles Wayne McNutt, minors, have materially changed since the time of the entry of the previous order of this Court, and that the best interests of said minors require that they remain with their father * * * who has had their care for the past twenty months."

The court ordered the custody of the children changed from the mother to the father with certain rights of visitation given the mother. The appellants excepted to the order of the court and perfected their appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District, whence the appeal was transferred to this court by the Supreme Court of Texas in its order equalizing the dockets of the Courts of Civil Appeals. In response to appellants' request, the trial court had filed Findings of Fact and Conclusions of Law. The court found as follows:

"1. Laurie Lane McNutt, a girl ten years of age, and Charles Wayne McNutt, a boy eight years of age, are the minor children of movant and respondent. They live with their father, the movant, and their paternal grandmother at 1022 Strickland Street, Dallas, Texas, where they have lived for the past twenty months.

"2. The movant and respondent were divorced on May 3, 1947, at which time the custody of the minor children was given to the respondent. The respondent, through the children's Bureau of Dallas, had them placed in different homes from time to time.

"3. Respondent married a Mr. Kovsky in July of 1948. About a year later, she took the children from the Dean Home, where they had been placed by the Children's Bureau. During the period of about nine months that respondent had the children with her, she entered them in school under the name of her present husband, Kovsky.

"4. On a motion set before the Court for hearing February 21, 1950, an order was entered by agreement of the parties that the legal custody be left in the respondent and that she have the school authorities register the children under their own name, McNutt, and that she carry said children to Sunday School and church on Sunday mornings. About three weeks after the date of said order, which was about March 15, 1950, respondent, who had the legal custody of the minors, voluntarily delivered the children to their father, the movant, and at the time of such voluntary action on respondent's part, she also gave him the children's

report cards and entered into an agreement with him whereby she was to have visitation privileges with the children on the first and fourth Saturdays of each month, since which time the children have remained in the care and custody of movant in his home, receiving from him every care and attention necessary to their welfare. Movant and respondent carried out their mutual agreement as to respondent's visitation privileges, and on one of their agreed days for respondent to visit with the children, which was in June, 1951, she refused to return them to movant, but instead, took them to the Roger Q. Mills School, where they had been enrolled and completed the school year of 1950 and had almost completed the entire school year of 1951, with instructions to the school authorities that they not be released to movant. The movant went to the school and the children were released to him and the children were returned to his home, where they have remained since they were given to him by respondent about twenty months ago, which was the longest period of time they have been permitted to remain in one place since the divorce was granted.

"5. The home of the movant is a seven-room house in which he, the children and his mother and cousin reside, and is a home where the children have been and are being tenderly and lovingly cared for by the movant and their paternal grandmother, and where they are receiving physical, mental, spiritual, social and emotional guidance by being properly fed and clothed, kept in school, given music, carried to Sunday School and church, and the children are permitted to have their friends in the home. It is a well furnished house and a wholesome environment. The children have joined North Dallas Baptist Church, where they are active and happy. Movant and his mother also belong to the same church. The children are well-mannered and happy in movant's home and in their church home.

"6. The respondent's home is a home where the husband and wife are of different religious faith; there is beer and other intoxicants kept in the home and drunk sociably though not to excess in the presence of the children. When the children are in respondent's home to visit over weekends, they are often carried on fishing trips and picnics and occasionally carried to Sunday School. Respondent's home is a nice six-room house, nicely furnished."

In its Conclusions of Law the court said:

"1. Respondent delivered the custody of the children to movant and voluntarily relinquished her right to their care and custody, thereby changing the conditions and circumstances.

"2. The delivery of the custody of the children to movant was a direct result of the voluntary act of the respondent, and by reason of this act, the children were placed in an environment shown to be in every respect a beneficial one, and to disrupt private domestic relations, which respondent has voluntarily brought about, would be against the best interest of the children.

"3. It is to the best interest of the minors and to their future welfare that their care, custody, control and possession should remain where they have been the past twenty months and where the proof shows the home in which they have been placed is not only an ideal one at the present time, but will likely remain so, and they are entitled to the benefits of the home and environment which will best promote the interests of said minors."

The appellants contend that the trial court erred, both in law and in fact, in finding that because the mother had voluntarily given the children to the father, she had abandoned her right to their custody.

■ A person seeking to change the custody of children has the burden of proving that, after the divorce, conditions have so changed as to render the other parent an improper custodian or that the welfare of the child demands a change of custody. 15 Tex.Jur. 681.

The appellee pleaded that the mother had voluntarily relinquished the custody of the children to him. But his motion for a change in the children's custody is based on considerably more than this—he pleaded that there has been a material change in conditions since the court originally awarded the children to their mother and that the welfare of the children demands that a change be made in their custody. In pleading a changed condition he alleged that on or about March 15, 1950, the appellant brought the children to the usual place where the appellee had been going to pick them up for their weekly visit with him. The mother stated that she was giving him the children and requested that she have them to visit with her on the first and fourth Saturday in each month and one week during the summer months. He also alleged, among other things, that he had taken the children into his care and custody and permitted the mother to have them at the times specified by her; that he had cared for them, looked after their physical, mental and spiritual needs for fourteen months; that he had kept the children in school, had given them piano lessons and had taken them to Sunday School and Church regularly; that on June 2, 1951, he had taken the children to visit the appellant in accordance with their agreement but was told by her that she was not going to let him have them again.

■■■ Our courts have held that in a child custody case the judgment is entitled to great respect and deference, if the trial court's findings are supported by sufficient evidence. It is not the province of an appellate court to disturb the decree even though the evidence is conflicting, because in a child custody case only the trial judge can make binding and conclusive findings on disputed evidence. So, in this case, if the record contains substantial evidence which will sustain the trial court's finding of changed conditions materially affecting the welfare of the children, that finding is binding on this court. 15 Tex.Jur. .673; Penn v. Abell, Tex.Civ.App., 173 S.W.2d 483; Neal v. Medcalf, Tex.Civ.App., 244 S.W.2d 666. We find the evidence ample to support the trial court's findings. The

appellee testified that the children had come to his home to live in March, 1950, and had been with him about twenty months at the time of the trial. He testified that on March 15, 1950, he had gone to pick up the children. After the children got into his car, their mother stated that she was giving them to him. The appellee's testimony continues:

"Q. Do you recall what time of the week it was that this happened?' A. It was 9 o'clock on Sunday morning.

"Q. What was said when she brought the children to you, what did she say to you? A. I was waiting in my car for them.

"Q. Just what did she say? * * * A. She said that I had tried to get them and I wasn't able to get custody of them and that since—because that we had been in Court so much she was going to give them to me and let me see for myself what a responsibility it was, and I asked her how long she was going to give them to me, and she said, 'Until you come on your hands and knees and beg me to take them back.'

"Q. Was that just voluntary on her part, did she just bring them and give them to you? A. Yes ma'am.

"Q. Was there any kind of agreement now with reference to her right of visiting the children after she gave them to you? A. She said that she wanted to see them twice a month, on the first Sunday and the fourth Sunday of the month, but if I wanted to take them to church she would see them the first Saturday and the fourth Saturday, and she said that she wanted them a week that summer on their vacation."

The appellee testified that he had taken custody of the children on that day and had had them since.

Another witness, Mrs. P. B. Stacy, had overheard the conversation between the appellee and the mother. Her testimony corroborates that of the appellee. Although the foregoing evidence was sharply contradicted by the appellants' witness-

es, especially by the mother, who said she gave the children to the father for the remainder of the school year only, there is sufficient evidence from the trial court's findings that the mother had voluntarily transferred the care and custody of the children to the appellee.

The appellants insist that the trial court's judgment ordering the change of custody was based solely on the agreement between the parties. As we have seen, however, the appellee based his motion for a change in custody on something more than the alleged agreement. He pleaded additional facts other than the agreement which he alleged constituted a change of conditions and circumstances since the date of the divorce. He alleged that he and his mother had purchased a larger house; that he had established a Christian home; that he was in a position to make a good home for the children; that when the appellant gave the children to him, he took them home and gave them every advantage: he had entered them in school, had seen after their physical needs, and had permitted them to visit their mother on the days agreed upon. He alleged that the appellant had not cared for the children properly; that she had kept and used intoxicants in their presence and on one occasion had given the little boy beer to drink. All of these allegations, as well as the court's findings in connection therewith, are supported by the evidence. Keeton v. King, Tex.Civ.App., 248 S.W.2d 500.

The appellants also insist that the court's order changing the custody of the children should be set aside in the absence of proof that the mother is morally unfit to have custody, regardless of the court's finding that it is to the best interest of the children and their future welfare that they remain in their father's custody.

In the case of Davis v. Sears, Tex.Com. App., 35 S.W.2d 99, the Supreme Court ruled that a judgment by a trial court decreeing it is to the best interest of the child to remain with one of the parties may not be overturned by a Court of Civil Appeals, 19 S.W.2d 159, if the trial court's judgment is sustained by the evidence and even though there is no pleading or proof that the parent asking for custody is morally unfit to have it. The facts in the Davis case are similar to the facts here, except that in the Davis case the parents were seeking custody of the child from a third person while in this case the father, who had actual possession of the children, was seeking their legal custody. In Legate v. Legate, 87 Tex. 248, 28 S.W. 281, the Supreme Court stated that, as a matter of law, a child is entitled to the benefits of the home and environment which will probably best promote the interest of the infant.

Since this evidence, when considered from the point of view favorable to the finding, is sufficient to support the trial court's findings and since the court concluded as a matter of law that it is to the best interest of the children that they remain in the control of their father and in his home—an environment which will best promote their interests—in our opinion the trial court's judgment was based on something more than a finding that the mother had voluntarily relinquished custody to the appellee. In its judgment the court found that the conditions affecting the welfare of the children have changed materially since the rendition of the divorce decree; therefore, it is now to the best interest of the children that they be in their father's custody where they have been for the past twenty months. In concluding that a change of conditions had occurred since the divorce which affected the children's welfare, the trial court probably took into consideration in its findings that the children had been in their mother's home only nine months out the five years they were in her custody and that the mother had married a man who is of a different nationality and religion from the appellee's. The record reveals that this change of custody hearing was tried before the same judge who had tried the divorce case and entered the original order granting the divorce and the mother custody of the children. It also reveals that after the divorce the appellee on three occasions had filed motions seeking to obtain custody of the

children. Each of these motions had been refused. Not until the court found that the conditions affecting the welfare of the children had materially changed, did he order their custody changed to their father. Salvaggio v. Barnett, Tex.Civ.App., 248 S.W.2d 244. A change of conditions and circumstances having been pleaded and proved, the trial court did not abuse its discretion in leaving the children in the care, custody and control of the appellee. King v. Shrum, 244 S.W.2d 720; Neal v. Medcalf, supra.

The appellants contend the court's finding that the father is a fit and proper person to have custody of the children was against the preponderance of the evidence. Evidence was introduced to show that on February 1, 1945, the appellee, while in the U. S. Army, had been placed in a hospital where his condition was diagnosed as Dementia Praecox, type undetermined. Other evidence introduced shows that the appellee has recovered from this condition, if he ever suffered from it. Dr. Arthur Schwenkenberg, a specialist in nervous and mental diseases who treated the appellee for a period of time, testified that he had apparently recovered, and the doctor even wondered if he had not been mistaken in his original diagnosis. Other evidence was adduced which reveals that the appellee is living a normal life and fails to reveal any abnormalities in his mode of living. The court's finding that the father is a fit and proper person to have custody of the children was not against the preponderance of the evidence. Thompson v. Doyal, Tex.Civ.App., 209 S.W.2d 425.

We have carefully reviewed the record in this case. Finding no reversible error, we overrule all the appellants' points of error and affirm the judgment of the trial court.