ANGEL, Plaintiff, v. ANGEL (now Clevenger), Defendant.

Common Pleas Court, Madison County.

No. 18990.   Decided December 3, 1956.

Forrest E. Sidener, Jr., for plaintiff.

J. Harvey Crow, for defendant.

## OPINION

By BAYNES, J.

This matter came on to be heard on plaintiff's motion to change visitation rights, each week, from noon Saturday, until Sunday 6 p. m. to Friday when school is dismissed until Saturday 6 p. m., during the school year, and from Friday noon to Saturday 6 p. m., during summer vacation. No contra motion was filed. Plaintiff and defendant offered testimony for and against the motion.

Plaintiff's sole reason for the motion is that he desires the child to be brought up in the Catholic Church. Defendant desires him to be

brought up as a Protestant. The child has been attending Sunday School at a Protestant Church and the London Public Schools.

Plaintiff contends, that since this court in January 1955 ordered custody to him from defendant, who had been awarded custody in the original decree in April 1950, which custody was reaffirmed during the present term of this Court contra defendant's motion, he has the sole right to decide what religious affiliation the child shall have.

Neither counsel cited any authority for their respective contentions nor alluded to the Ohio Statutes relating to care, custody and control of minor children. This imposes an unfair burden on the Court.

The question of religious training of a child of divorced parents is a controversial subject from which the Courts may deem it advisable to stand aloof. A controversy as to religion is generally considered insufficient cause for changing custody. Nelson on Divorce and Annulment, 2d ed., v. 2, 183, Section 15.13. Visitation rights must be considered within like limitations.

As is not infrequent we are unable to find any reported case in Ohio which will aid the Court in resolving the case. Four sections of the Revised Code are to be considered in pari materia, establishing the legislative policy and the basis of decision for Courts in cases involving custody and visitation rights. **Sec. 3109.03 R. C.,** provides:

"When husband and wife are living separate and apart from each other, or are divorced, and the question as to care, custody and control of their offspring is brought before a court of competent jurisdiction, they shall stand upon an equality as to the care, custody and control of such offspring, so far as parenthood is involved."

**Sec. 3105.21 R. C.,** provides:

"Upon satisfactory proof of any of the charges in the petition for divorce and alimony, the Court of Common Pleas shall make such order for the disposition, care and maintenance of the children of the marriage, as is just, and in accordance with §3109.04 R. C."

The applicable part of §3109.04 R. C., provides:

"Upon hearing the testimony of either or both parents, corroborated by other proof, the Court shall decide which of them shall have the care, custody and control of the offspring, taking into account that which would be for their best interest . . . ."

The applicable part of §3109.05 R. C., provides:

"The Court may order either or both parents to support or help support their children, and may make any just or reasonable order or decree permitting the parent who is deprived of the care, custody and control of the children to visit them at such time and under such conditions as the Court may direct. . . ."

It will be noted that the statutes in each section continuously use the word parent. In legal contemplation "parenthood" is the state or relation of a parent. "Parent," in legal contemplation, is not only the father and mother, that is the male and female who generated the child, but is the one or both of them who still possesses some right to the custody or control of a child, which he, she or they can relinquish.

It has been stated that the right of a parent to decide the religious

faith in which children shall be educated is not necessarily lost merely because custody is taken from or refused the parent in a judicial proceeding. Generally speaking and apart from teachings that are subversive of morality and decency and some others equally obnoxious, the courts have no authority over that part of the child's training which consists in religious discipline, 39 Am. Jur. 684, Section 50.

We agree with the latter proposition to the extent that our courts have no authority to direct either the person having custody or the visitation rights, under the above quoted Ohio Statutes, to direct or prevent any particular unobjectionable form of worship or lack of worship, Christian or otherwise. On the other hand courts recognize that there is more to religion than the teaching of a moral code of conduct, which, of course, is inherrent in all Christian denominations, and perhaps as well in others.

But the courts cannot ignore the fact that marriages between persons of different denominations and of different forms of worship are prevalent. Such situations often give rise to conflict, becoming the subject of or affecting questions to be decided by the courts. In so far as may be necessary such conflict is not to be, and cannot be, ignored.

This leads to the case of Boerger v. Boerger, 97 A. 2d, 419, 26 N. J. Super 90, decided 15 May 1953, where the Chancellor in an excellent opinion in a case involving the religious training, which was in conflict between the divorced parents of children, held, among other things:

"All Christian denominations stand on the same footing in the eye of the law."

This is the law of Ohio as we find it.

When it is made to appear that a conflict between divorced parents as to religious instruction is affecting the welfare of their children, a court should always act in accordance with what is best for the happiness and welfare of the child. In legal contemplation the court recognizes no difference in object between religious and other conflicts. As between Christian religions denominational differences are irrelevant and cannot be the basis of decision by the court.

As observed in the opinion, page 422:

"In New Jersey, as generally throughout the nation, the rights of both parents, are, in the absence of misconduct, held to be equal as regards the care, nurture, education and welfare of the children of the marriage."

A fair construction of the Ohio Statutes quoted leads to the same conclusion. We so hold. This is unaffected by the fact that one of the divorced parents has legal custody and the other has, what for lack of a better term, been designated as visitation rights.

In the instant case we have twice decided that it was for the welfare of the child that his father have legal custody. On the other hand the welfare of the child also required that his mother have most liberal visitation rights not inconsistent with that welfare.

This, in effect designates the domicile of the child to be that of his father who has the primary, but not the exclusive right, especially in

the interval that the mother has the child, to determine what is proper for the welfare of the child.

In these adverse circumstances of a "split relationship" the power of the Court is directed solely to making the condition, as it affects the welfare of the child, as harmonious as can be. Harmony is not only the strength and support of all institutions but the strength and support of the individual human being.

Nothing in the record of this case shows that the nine year old boy has been or will be affected by the kind of religious training he has received in the past or will receive in the future. Whether the form of training is single or dual is not of present, or should it be of, concern.

Therefore on the basis of the testimony adduced on this motion the court is of the opinion that visitation rights are to be changed as follows:

1. Defendant shall have visitation rights out of the home of plaintiff each week end from 4 p. m. Friday to 6 p. m. Sunday, except the second week end of the month. December 7th to the 9th is to be taken as the first such week end.

2. During the summer school vacation period defendant is to have the child for two weeks as plaintiff and defendant may arrange.

Plaintiff's counsel is directed to prepare an Entry in accordance with this decision and submit the same to opposing counsel and the Court according to rule. Costs of this motion are to be taxed to plaintiff.