DOLORES J. WOJNAROWICZ, PLAINTIFF, v. EDWARD T. WOJNAROWICZ, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided January 8, 1958.

350

*Messrs. Parsons, Labrecque, Canzona & Combs (Mr. Rocco Ravaschiere, appearing), attorneys for plaintiff.*

*Mr. Edward G. D'Alessandro, attorney for defendant.*

MARIANO, J. S. C. This is a custody proceeding arising out of a divorce action instituted by Dolores J. Wojnarowicz, wife of Edward T. Wojnarowicz. The divorce action was heard on June 12, 1957 and at the time the husband did not contest the proceedings. The complaint was dismissed without prejudice and the following judgment was orally announced: Plaintiff was to receive the custody of the three children in question and defendant to pay for their support. It provided for the exercise of reasonable rights

of visitation by the defendant father. The court also announced that the plaintiff was to have the children attend the Roman Catholic Church and to obtain a Roman Catholic education.

Plaintiff expressed her dissatisfaction concerning the order of the court, and prior to the entry of a formal judgment the parties in question requested a full hearing with respect to the custody of the said three children. As a result, on December 16, 1957, a full hearing was held and the following facts were developed. The children of the marriage are Patricia Joyce, age 7; Stephen, age 5, and David, age 3. They have been in the complete custody of the plaintiff since their birth. The said children were baptized in the Roman Catholic faith and the eldest child Patricia attended parochial school for one full school year. The mother of the said children was originally baptized in the Church of England and subsequently embraced the Roman Catholic faith, and also attended a Roman Catholic boarding school in Australia. Plaintiff and defendant were married in Australia, the home of her birth. Shortly thereafter she came to Detroit, Michigan, to reside with the parents of her husband, and while residing there she voluntarily again embraced the Roman Catholic faith and later the parties were remarried in the Catholic church.

The parties moved to the State of New Jersey and it was here their separation took place in August of 1956.

Plaintiff testified that she gave consideration to changing her religion in the early spring of 1956. About the same time she became acquainted with Reverend Tingue, a Methodist minister, who held himself out as a marriage counselor. She joined the Methodist church and has since August of 1956 to date continued as a member thereof.

The defendant is a merchant seaman, who alleges his domicile to be in Detroit, and he professed his intention of delivering his children to his mother in Detroit or placing them in some institution in New Jersey, in the event the court should award him custody. He is very seldom home and in between sea trips spends a very short period of time

in New Jersey. That he has no physical accommodations to properly raise his children is obvious.

 The test to be applied in the determination of the issue of custody is a simple one: What is for the best interests of the child? *Fantony v. Fantony,* 21 *N. J.* 525, 536 (1956); *Scanlon v. Scanlon,* 29 *N. J. Super.* 317, 325 *(App. Div.* 1954); *Grove v. Grove,* 21 *N. J. Super.* 447, 454 *(App. Div.* 1952). By *N. J. S. A.* 9:2–4 the right of both parents is declared to be equal in the absence of misconduct. In the administration of this legislation the courts, in recognition of an inexorable natural force, customarily award the custody of a child of tender years to its mother unless she is so physically or morally deficient that its welfare would not be served by doing so. *Fantony v. Fantony, supra; Grove v. Grove, supra,* 21 *N. J. Super.* at *page* 454; *In re Jackson,* 13 *N. J. Super.* 144 *(App. Div.* 1951); *In re Shaheen,* 127 *N. J. Eq.* 75 *(E. & A.* 1940); *Dixon v. Dixon,* 71 *N. J. Eq.* 281, 282 *(E. & A.* 1906); *Power v. Power,* 66 *N. J. Eq.* 320, 327 *(E. & A.* 1904). And in such cases there is a presumption that the child's well being is better safeguarded in the hands of the mother. *Fantony v. Fantony,* 36 *N. J. Super.* 375, 380 *(Ch.* 1955). affirmed 21 *N. J.* 525 (1956). He who asserts to the contrary bears the burden of establishing the unfitness. *Grove v. Grove, supra,* 21 *N. J. Super.* at *pages* 454, 455. Years ago Vice-Chancellor Leaming expressed the settled doctrine in this way:

"It is an unusual order to take children of the age of these minors from the custody of their mother, or, as in this case, refuse to restore them to the mother on her application, their ages being, respectively, three and four years only, and the most patent reasons should exist showing the disqualification of the mother to possess the children." *Bakley v. Bakley,* 65 *A.* 440 *(Ch.* 1907), (not in official reports).

 At this point the court is compelled to state that it expressly finds against the moral or physical unfitness of the mother. The custody of the three infant children is hereby awarded to plaintiff mother.

The father argues that if mother plaintiff be awarded custody then the court should order that the three infant children receive religious training in the Catholic faith.

The intervention in matters of religion is a perilous adventure upon which the judiciary should be loath to embark. *Donahue v. Donahue,* 142 *N. J. Eq.* 701 (*E. & A.* 1948). Nevertheless, in awarding the custody of an infant the religious training of the child is appropriately an element which may be considered in promoting the general welfare of the infant. *Boerger v. Boerger,* 26 *N. J. Super.* 90 (*Ch. Div.* 1953). Therefore, religious training cannot in all cases be entirely disregarded. Once custody is awarded, the courts are loath to interfere with the religious training sanctioned by the custodian. No end of difficulties would arise if judges sought to proscribe the selection of a religious faith made by a parent having custody. *Donahue v. Donahue, supra.*

In our State, the rights of both parents are held to be equal. See *R. S.* 9 :2–4:

"In making an order of judgment relative to the custody of the children pending a controversy between their parents, or in regard to their final possession, the rights of both parents, in the absence of misconduct, shall be held to be equal, and they shall be equally charged with their care, nurture, education and welfare, and the happiness and welfare of the children shall determine the custody or possession."

The mother, in the exercise of her equal right, is rearing the children in a faith other than that of their father. No evidence was adduced which would justify judicial interference with plaintiff's decision.

The Catholic or Methodist training has not progressed to a degree where definite religious ideas have been impressed on the minds of the three infant children. Obviously, the children cannot, because of their immaturity, have any real capacity to form an intelligent opinion on so complex a subject as religion. For the same reason, the court cannot privately examine the children to learn of their preference

which has a place in the determination, but not a conclusive place. *Callen v. Gill,* 7 *N. J.* 312 (1951).

It should be realized that the judgment in its relation to custody is always temporary in nature and may be changed at any time as the future conditions and circumstances reasonably recommend. *Brown v. Parsons,* 136 *N. J. Eq.* 493 (*E. & A.* 1945).

Until the children acquire the maturity personally to make known their own choice which the court may consider, it is my opinion that the happiness and welfare of the children will be served by not intervening with respect to the religious training selected by the plaintiff mother.

Counsel will submit form of judgment in accordance with this opinion.