[No. 42059. En Banc. October 28, 1971.]

MAUREEN C. MUNOZ, *Respondent*, v. VINCENTE S. MUNOZ, JR., *Appellant.*

*T. C. Boyle,* for appellant.

*Donald E. Mirk,* for respondent.

HUNTER, J.—This case arises from a controversy of parents in a divorce action over the religious training of their minor children.

The defendant (appellant), Vincente S. Munoz, Jr., and the plaintiff (respondent), Maureen C. Munoz, were married in 1960 and three children were born as the issue of the marriage. A boy was born January 10, 1964, a boy born July 7, 1966, and a girl born January 4, 1970. It is undisputed from the facts that the question of religion was an unsettled matter with the parties. The defendant's background was Catholic while the plaintiff was a member of the Church of Jesus Christ of Latter Day Saints. Prior to the marriage the plaintiff agreed to become a Catholic. Subsequently, however, she again followed the Mormon beliefs. All of the children were baptized Catholics and were also blessed and given a name in the Church of Jesus Christ of Latter Day Saints. The older boy attended Catholic Church regularly with his father and religious classes conducted by the Catholic Church. The younger boy attended Catholic Church with his father on occasion. During the pendency (13 months) of the divorce action, the older boy attended early Sunday Mass in the Catholic Church with his father and later the children would go to services with their mother in her church.

Both parties were granted a divorce by decree entered in King County, May 19, 1970. Custody and care of the three children was awarded to the mother and visitation rights allowed the father. The trial court further determined that it would be detrimental to the children to have them exposed to conflicting religious beliefs and held that it would be in the best interests of the children to have them raised

in the religious belief of the parent having their custody. Accordingly, the sole control over their religious training was awarded to the plaintiff. The defendant was specifically prohibited from taking the children to any Catholic Church services or to any instructional classes sponsored by the Catholic Church until further order of the court or until such time as the parties may mutually agree that this would be permissible. From this part of the order of the trial court relating to the religious training of the children, the defendant now appeals, contending that the best interests and welfare of the children are not served by such a disposition.

It is well established that in child custody matters the best interests and welfare of the children are the primary and controlling considerations. *Andersen v. Andersen,* 75 Wn.2d 779, 453 P.2d 856 (1969); *Lines v. Lines,* 75 Wn.2d 489, 451 P.2d 914 (1969); *Schultz v. Schultz,* 66 Wn.2d 713, 404 P.2d 987 (1965); *Chatwood v. Chatwood,* 44 Wn.2d 233, 266 P.2d 782 (1954). Similarly, where there is a conflict between the parents regarding the religious faith and training of the children, the paramount concern is the welfare of the children. *Angel v. Angel,* 2 Ohio Op. 2d 136, 140 N.E.2d 86 (1956); *Schreifels v. Schreifels,* 47 Wn.2d 409, 287 P.2d 1001 (1955). In *Angel,* the court said, at page 138:

> When it is made to appear that a conflict between divorced parents as to religious instruction is affecting the welfare of their children, a court should always act in accordance with what is best for the happiness and welfare of the child. In legal contemplation the court recognizes no difference in object between religious or other conflicts.

The courts are reluctant, however, to interfere with the religious faith and training of children where the conflicting religious preferences of the parents are in no way detrimental to the welfare of the child. The obvious reason for such a policy of impartiality regarding religious beliefs is that, constitutionally, American courts are forbidden from interfering with religious freedoms or to take steps

preferring one religion over another. *Wojnarowicz v. Wojnarowicz,* 48 N.J. Super. 349, 137 A.2d 618 (1958); *Jackson v. Jackson,* 181 Kan. 1, 309 P.2d 705 (1957); *Stone v. Stone,* 16 Wn.2d 315, 133 P.2d 526 (1943); *see Custody of Child—Religion As Factor,* Annot., 66 A.L.R.2d 1412 (1959); *Divorce — Visitation Rights — Religious Conflicts,* Annot., 88 A.L.R.2d 217 (1963); 2 Nelson on Divorce and Annulment, § 15.13, at 183 (2d ed. 1961), and H. Clark, Law of Domestic Relations, § 17.4(e), at 588 *et seq.* (1968).

In *Wojnarowicz,* that court, which was confronted with a similar situation regarding a controversy over the religious training of the children of divorced parents, said, at page 354:

> The intervention in matters of religion is a perilous adventure upon which the judiciary should be loath to embark. *Donahue v. Donahue,* 142 *N. J. Eq.* 701 (*E. & A.* 1948). Nevertheless, in awarding the custody of an infant the religious training of the child is appropriately an element which may be considered in promoting the general welfare of the infant. *Boerger v. Boerger,* 26 *N. J. Super.* 90 (*Ch. Div.* 1953). Therefore, religious training cannot in all cases be entirely disregarded.

H. Clark, Law of Domestic Relations, *supra,* at 589, remarks:

> For the most part, however, it is difficult to see how, in a custody controversy between parents, a difference in religious belief should have any appreciable influence on the outcome.

Thus, the rule appears to be well established that the courts should maintain an attitude of strict impartiality between religions and should not disqualify any applicant for custody or restrain any person having custody or visitation rights from taking the children to a particular church, except where there is a clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child.

■ We recognize the general rule that in child custody cases the trial court, in furtherance of the best interests and welfare of the child, is vested with a wide latitude of

discretion and in the absence of a manifest abuse of discretion in awarding the custody and control of minor children, its judgment will not be disturbed on appeal. *Andersen v. Andersen, supra,* and cases cited therein. However, where the trial court does not follow the generally established rule of noninterference in religious matters in child custody cases without an affirmative showing of compelling reasons for such action, we are of the opinion that this is tantamount to a manifest abuse of discretion.

In the instant case, there is no affirmative showing in the record that it would be detrimental to the well-being of the children to allow the defendant to take them to the Catholic Church or to religious instruction in that faith during the periods of his rights of visitation. The record shows speculation on the part of the parents that it was "confusing" to the 6-year-old son by reason of his asking why he was required to attend two churches. As indicated in the trial court's oral decision, it was to avoid confusion on the part of the children that the order was entered, having in mind they would be able to make their own determination at the age of 12 or 13. We believe the trial court went too far by its restrictive order, there being an absence of an affirmative showing that the children were emotionally upset or emotionally disturbed by attending two churches. Further, there is no evidence to support a finding that exposure to two religious beliefs has had, or will have, any adverse effect upon the children. The trial court itself, at one point during the trial, made the following observation:

> I don't think, once this divorce is resolved, that it is going to be as confusing to the children to be attending mass with Mr. Munoz on occasion and also attending services in the Mormon Church.

A situation similar to the present case was considered in *Angel,* wherein the divorced husband who had custody of their minor child sought to have the wife's visitation rights on weekends changed so as to deny her the opportunity of taking the child to religious instruction in

one Christian denomination since he desired the child be brought up in another. The court stated:

Nothing in the record of this case shows that the nine-year-old boy has been or will be affected by the kind of religious training he has received in the past or will receive in the future. Whether the form of training is single or dual is not of present, or should it be of [future], concern.

We are not convinced, in absence of evidence to the contrary, that duality of religious beliefs, per se, creates a conflict upon young minds. Because of their young ages, it is doubtful that the children in this case sufficiently understand the religious teachings to be concerned about any conflicting beliefs. In *Wojnarowicz*, wherein the children were 7, 5 and 3 years of age, respectively, the court stated, at page 354:

The Catholic or Methodist training has not progressed to a degree where definite religious ideas have been impressed on the minds of the three infant children. Obviously, the children cannot, because of their immaturity, have any real capacity to form an intelligent opinion on so complex a subject as religion. For the same reason, the court cannot privately examine the children to learn of their preference which has a place in the determination, but not a conclusive place. *Callen v. Gill*, 7 *N. J.* 312 (1951).

It should be realized that the judgment in its relation to custody is always temporary in nature and may be changed at any time as the future conditions and circumstances reasonably recommend. *Brown v. Parsons*, 136 *N. J. Eq.* 493 (*E. & A.* 1945).

For the reasons heretofore stated, we find that the order of the trial court providing the sole control of the religious training of the three children be awarded to the plaintiff and prohibiting the defendant from taking his children to any Catholic Church services or to any instructional classes sponsored by the Catholic Church, constituted a manifest

abuse of discretion. Therefore, that part of the order so providing is reversed and the decree is so modified.

HAMILTON, C.J., ROSELLINI, HALE, NEILL, SHARP, and WRIGHT, JJ., concur.

FINLEY and STAFFORD, JJ., concur in the result.