Yulanda and Boyd Hilley were divorced in 1979. As part of that proceeding, the trial judge awarded Yulanda custody of her thirteen-year-old daughter and eight-year-old son. In his decree awarding custody, the trial judge ordered, inter alia:
 That during the time that the children are in the care, custody, and control of [Yulanda], she will curtail all activities that require her to be away from the children, or requires the children to travel from the home during the week except for one church function of reasonable duration and normal school and social functions in which the children may become involved.
The intent of this provision was made clear during the hearing of Yulanda's motion for new trial. During trial, Yulanda testified that she is an evangelist and church choir member. These activities require her to frequently attend on week nights and weekends various services, conventions, revivals and choir performances. In the past her children have accompanied her to these events, which typically last until 11:00 p.m. or later. The children oftentimes have fallen asleep on the church pews and had to be awakened when Yulanda was ready to return home. *Page 709 
During the hearing of Yulanda's motion for new trial, the trial judge stated that he considered Yulanda's actions in taking the children to these late night functions during the week bordered upon abuse and, but for the provision restricting Yulanda's activities, he would have awarded custody to Boyd Hilley. The trial judge further stated that the provision was not intended to prevent Yulanda from securing normal employment during those hours when the children were in school, but was intended to restrict her engagement in the numerous church activities.
The Court of Civil Appeals, 405 So.2d 704, upheld the provision in question as a reasonable condition upon Yulanda's custody of the children. We granted certiorari to review the narrow question of whether a court can condition the award of custody upon the curtailment of the parent's religious activities.
Code 1975, § 30-3-1 provides in part:
 Upon granting a divorce, the court may give the custody and education of the children of the marriage to either the father or the mother, as may seem right and proper, having regard to the moral character and prudence of the parents and the age and sex of the children; and pending the action, may make such orders in respect to the custody of the children as their safety and well-being may require. . . .
In deciding which parent should have custody, the paramount consideration is the health, safety and well-being of the children. Skipper v. Skipper, 280 Ala. 506, 195 So.2d 797
(1967); Fowler v. Fowler, 280 Ala. 305, 193 So.2d 748 (1966);Keele v. Keele, 347 So.2d 1360 (Ala.Civ.App. 1977); Higgins v.Higgins, 336 So.2d 194 (Ala.Civ.App. 1976).
The propriety of considering the parents' religious beliefs and practices as a factor in awarding custody was recognized in Alabama in Clift v. Clift, 346 So.2d 429 (Ala.Civ.App.), cert.denied, 346 So.2d 439 (Ala. 1977). In that case the court rejected the plaintiff's contention that consideration of her religious beliefs impermissibly infringed on her right to pursue the religious beliefs of her choice, and noted:
 The Constitution guarantees that citizens of the United States shall be free to pursue the religious beliefs of their choice. Consonant with this First Amendment right, courts have repeatedly declared that religious beliefs alone shall not constitute the sole determinant in child custody awards. . . .
 However, that one's religious beliefs may not serve as the sole consideration in a child custody proceeding does not necessarily preclude exploration into those beliefs. In this state, as in other jurisdictions, the ultimate consideration in determining the proper custody of the child is what is in his best interests. . . . Religious beliefs are as diverse as the individuals who comprise the citizenry of this country. Unfortunately, some of these beliefs embrace philosophies which, contrary to being in the best interest of the child, might actually imperil his physical or mental health. Albeit courts are forbidden from weighing the merits of the religious tenets of the various faiths, they nevertheless are not precluded from inquiring into the beliefs of the parties who are seeking custody of the child in order to insure that such beliefs do not endanger the child.
346 So.2d at 435-35 (citations omitted).
Although Clift did not involve an order which conditioned
continued custody upon modification of religious practices, the Arizona case of Stapely v. Stapely, 15 Ariz. App. 64,485 P.2d 1181 (1971), did involve such an order. In that case, the court issued an order which prohibited the mother, a devout Jehovah's Witness, from allowing the children to distribute or sell religious literature in public, and further required the mother to notify the father of any illness or injury suffered by the children so that the father could participate in the selection of a physician, hospital and course of treatment. The order provided in part:
 In the event a whole blood transfusion is recommended by a licensed physician as being in the best interest of any of the *Page 710 
minor children, the [father] shall be entitled to exclusively make the decision to authorize or not, said whole blood transfusion. In the event the [mother] attempts or does interefere with such decision by the [father] or fails or refuses to permit him to exercise the aforesaid rights, the permanent care, custody and control of each and all of the minor children of the parties shall thereafter vest in the [father].
15 Ariz. App. at 67; 485 P.2d at 1184 (emphasis added).
When the mother failed to comply with this order, the father petitioned for and was awarded custody of the children. In affirming the award, the Arizona Court of Appeals stated:
 We agree with the proposition that the mother's religious views, albeit at variance with those of the majority, [are] not, standing alone, a ground for a change of custody. . . . Where, however, there is a serious danger to the life or health of a child as a result of the religious views of a parent, courts in other jurisdictions have recognized that this may bar custody by the parent holding such views by an appropriate order.
15 Ariz. App. at 70, 485 P.2d at 1187 (citations omitted).
An order prohibiting the father from taking his children to any Catholic services or to any instructional classes sponsored by the Catholic Church while the children were visiting him was held to be an abuse of discretion in Munoz v. Munoz,79 Wn.2d 810, 489 P.2d 1133 (1971). There the court stated:
 Thus, the rule appears to be well established that the courts should maintain an attitude of strict impartiality between religions and should not disqualify any applicant for custody or restrain any person having custody or visitation from taking the children to a particular church, except where there is a clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child.
 We recognize the general rule that in child custody cases the trial court, in furtherance of the best interests and welfare of the child, is vested with a wide latitude of discretion and in the absence of manifest abuse of discretion in awarding the custody and control of minor children, its judgment will not be disturbed on appeal. . . . However, where the trial court does not follow the generally established rule of noninterference in religious matters in child custody cases without an affirmative showing of compelling reasons for such action, we are of the opinion that this is tantamount to a manifest abuse of discretion.
79 Wn.2d at 813-14, 489 P.2d at 1135 (citations omitted.) Because the appellate court found no evidence that exposure to two different religions, i.e., the father's and the mother's, had any detrimental effect upon the children, it struck the trial court's order as an abuse of discretion.
A situation similar to that in Munoz existed in Compton v.Gilmore, 98 Idaho 190, 560 P.2d 861 (1977). The court in that case stated that the trial judge's oral instruction that the father refrain from providing religious training for his daughter while she was visiting him was erroneously and improvidently given in light of the general rule against judicial interference in religious matters.
Also, in Battaglia v. Battaglia, 9 Misc.2d 1067, 172 N.Y.S.2d 361
(1958), the court, in changing custody from the mother, a devout Jehovah's Witness, to the father, stated:
 Petitioner, of course, enjoys her constitutional right to freedom of religion and may practice the religious faith of her choice without interference. She has not, however, the right to impose upon an innocent child the hazards to it flowing from her own religious convictions. The welfare of the child is paramount.
. . . .
 The child has a right to survival and a chance to live and the court has a duty to extend its protecting arm to the child. It is of no concern to the court what religious *Page 711 
preference the parents may elect. The best interests of the child are the primary concern in all custody conflicts and not the desires of either the mother or father.
9 Misc.2d at 1068, 172 N.Y.S.2d at 362 (citations omitted).
Although the decisions in Stapely, Munoz, Compton andBattaglia could possibly be construed as authority for the trial judge's order in the present case, they are all distinguishable on one very important point: In none of the cited cases did the orders prohibit the parents from themselves following and/or engaging in the beliefs and practices of their chosen religion. The orders merely prohibited the parents from binding the children to their particular beliefs or practices when they threatened the health or welfare of the children. The order in the present case, however, goes beyond that. It effectively restricts Yulanda's free exercise of her chosen religion by providing that "she will curtail all activities that require her to be away from the children. . . ." Thus, Yulanda is not free to attend church or other church related activities during that time when the children are out of school because the order does not permit her to leave the children in the care of a babysitter or other suitable attendant. If she violates the court order she is subject to being held in contempt. See Hallford v. Hallford, 390 So.2d 295 (Ala.Civ.App. 1980); Schotz v. Oliver, 361 So.2d 605 (Ala.Civ.App. 1978). Viewed in the light of the free exercise clauses of the United States Constitution, amend. I, and the Alabama Constitution, art. I, § 3, we think that conditioning the award of custody upon the restriction of the parent's right to free exercise of religion is an impermissible infringement on religious freedom and therefore constitutes an abuse of discretion.*
This is not to say, however, that a trial judge may not consider what effect a parent's involvement in religious activities will have upon the welfare and best interests of the child. When presented with a situation where the involvement of the parents in religious activities could have a direct and adverse effect upon the children, the trial judge is free to examine the extent of that involvement and, if he determines that such involvement will threaten the welfare of the child, then the court may award custody to whomever it deems to be the most appropriate custodian. Thus, in the present case, if the trial judge determines that Yulanda's continued involvement in church related activities will be detrimental to her children, then the trial judge could consider awarding custody of the children to their father.
We think it fair to comment that the language of the trial court's final decree is probably more restrictive than the court actually intended. We make this observation in light of the judge's comments on motion for new trial concerning the meaning of the decree.
The judgment of the Court of Civil Appeals is reversed to the extent that it is inconsistent with this opinion. The judgment is otherwise affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the Justices concur, except JONES, J., who concurs in the result.
* This case does not present, nor do we decide, a situation where a parent who seeks custody consents to restrict his or her involvement in religious activities, the pursuit of which might be detrimental to the children.