724 P.2d 1247

**Kaaron Wahlberg FUNK, Petitioner/Appellee,**

v.

**Stanley Louis OSSMAN, Respondent/Appellant.**

**No. 2 CA–CIV 5578.**

Court of Appeals of Arizona, Division 2, Department A.

April 11, 1986.

Review Denied Sept. 9, 1986.

Ann M. Haralambie, Tucson, for petitioner/appellee.

Lieberthal & Kashman, P.C. by David H. Lieberthal and Howard A. Kashman, Tucson, for respondent/appellant.

HOWARD, Presiding Judge.

This is an appeal from the order of the court in which appellant was enjoined from taking the minor child of the parties to formal Jewish religious training or indoctrination.

The record shows that following appellee's conversion to Judaism, the parties were married in 1973 in a formal Jewish ceremony and that in 1978, they were divorced. At this time they had one child, Hal, who was then 15 months old. His custody was awarded to appellee and appellant was given reasonable visitation rights.

Following her divorce, appellee converted, becoming a lay minister in the Lutheran church. She began to raise Hal in this religion.

In 1983, appellant filed a petition for an order to show cause wherein he prayed, inter alia, that he be given the right to raise their minor child in the Jewish faith. In his petition appellant requested that the court enter an order that Hal be raised and educated as a Jew, that he not be educated or indoctrinated at home or any other place in any other religion, that Hal not attend any church or non-Jewish house of worship for any educational or spiritual reasons whatsoever, that Hal attend Sunday school every Sunday at Temple Emanu-El, that he attend Hebrew school at the appropriate age with the ultimate goal of bar mitzvah and, that the parties should be ordered to abide by any other rules of education proposed by Temple Emanu-El consistent with the goal of bar mitzvah. A hearing was held in 1984 before the Honorable William N. Sherrill which included testimony of three psychologists, one of whom was retained by appellant. The trial court found that all three psychologists believed that a child should not be simultaneously raised in, and receive religious training in both religions and that training in both religions would not be in the best interests of the child. The court further found from the testimony of the psychologists that it would be very hard on the child and against the best interest of the child if he were living with the custodial parent, a practicing Christian, but was receiving formal religious education in Judaism. The trial court denied appellant's request and ordered that appellee shall continue to have the right to direct and control the religious training of the minor child.

On November 5, 1984, approximately seven months later, appellee filed the petition for an order to show cause which is the subject of the present appeal. In the petition she alleged that appellant was in contempt of the court order by enrolling Hal in Jewish Sunday school. There were also other allegations of contempt regarding appellant's failure to timely return the child after his visitations. The appellant responded to appellee's petition and filed his own counter-petition requesting the child be allowed to attend Jewish Sunday school.

In 1985, at the hearing on the order to show cause and the counter-petition, the Honorable Gordon Kipps took judicial notice of the findings and order previously entered by Judge Sherrill. Additional testimony was introduced into evidence, including testimony from a psychologist and the rabbi at the Sunday school which Hal had been attending.

The trial court did not find appellant in contempt of court, but it did order that for each day the child was returned to appellee late from summer visitation, appellant would pay appellee the sum of $100 as a penalty.

The trial court also found that the teachings and doctrines of Christianity and Judaism are mutually exclusive and enjoined appellant from taking the child who was then eight years old for formal Jewish religious training or indoctrination, but permitted the child to be involved in his father's religion short of religious indoctrination. In fact, the record shows that appellee had no objection to allowing the child to go to synagogue with his father, participate in Jewish holidays and Jewish religious services but rather she only objected to the placing of the child in Sunday school.

Appellant contends: (1) It was improper for the court to enjoin appellant from indoctrinating his son in Judaism under the pertinent child custody statute since no immediate harm to the child was shown; (2) the injunction violated his constitutional guarantee of freedom of religion, and (3) it was improper for the court to impose a prospective fine for anticipated wrongdoing absent a finding of civil contempt.

■ As to the first issue raised by appellant, it would appear that at the very least, the doctrine of collateral estoppel applies. Appellant never appealed from Judge Sherrill's order. It is clear that this issue was litigated. It is also clear by the findings and order of Judge Sherrill that appellee was to have the exclusive right to control the religious training of their minor child.

This was done by Judge Sherrill after hearing testimony from psychologists, and finding that it was in the best interest of the child that such religious training be vested solely in appellee. There have been no changed circumstances which justify reopening the religious issue. However, assuming arguendo, that collateral estoppel does not apply, the trial court did not err.

A.R.S. § 25–338(A) provides:

"Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health, care and *religious training*, unless, upon motion by the noncustodial parent, the court, after hearing, finds that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired." (Emphasis added.)

It has been held by courts interpreting statutes similar to A.R.S. § 25–338(A) that such statutes do not give the custodial parent an absolute mandate to determine all facets of the children's religious training, absent a showing that such determination endangers the child's physical health or impairs the child's emotional development. Instead, such statutes are intended to provide a guideline for the custodial parent and the courts in the general area of child welfare and upbringing. The right to make the initial decision on such matters is given to the custodial parent, whereas the burden is placed upon the noncustodial parent to establish the fault of such custodial determination. *Marriage of Heriford*, 586 S.W.2d 769 (Mo.App.1979); *Munoz v. Munoz*, 79 Wash.2d 810, 489 P.2d 1133 (1971). Such a statute gives recognition to and does not sweep away the firmly established principle that at all levels, at all times and in all forums, the welfare and best interest of the child is of prime and overriding importance as measured by the particular facts and circumstances of each case before the courts. *Marriage of Heriford*, supra; *Munoz v. Munoz*, supra.

When it is made to appear that a conflict between divorced parents as to religious instruction is affecting the welfare of their children, a court should always act in accordance with what is best for the happiness and welfare of the child. In legal contemplation, the court recognizes no difference in objectives between religious or other conflicts. *Angel v. Angel*, 2 Ohio Op.2d 136, 140 N.E.2d 86 (1956); *Munoz v. Munoz*, supra.

The court's interference in such conflicts is not, however, unlimited:

"The courts are reluctant, however, to interfere with the religious faith and training of children where the conflicting religious preferences of the parents are in no way detrimental to the welfare of the child. The obvious reason for such a policy of impartiality regarding religious beliefs is that, constitutionally, American courts are forbidden from interfering with religious freedoms or to take steps preferring one religion over another. *Wojnarowicz v. Wojnarowicz*, 48 N.J.Super. 349, 137 A.2d 618 (1958); *Jackson v. Jackson*, 181 Kan. 1, 309 P.2d 705 (1957); *Stone v. Stone*, 16 Wash.2d 315, 133 P.2d 526 (1943); See Custody of Child-Religion As Factor, Annot., 66 A.L.R.2d 1412 (1959); Divorce-Visitation Rights-Religious Conflicts, Annot., 88 A.L.R.2d 217 (1963); 2 Nelson on Divorce and Annulment, § 15.13, at 183 (2d Ed.1961), and H. Clark, Law of Domestic Relations, § 17.4(e), at 588, et seq. (1968)." 489 P.2d at 1135.

When do the courts interfere? We adopt the rule set forth in *Munoz:*

"Thus, the rule appears to be well established that the courts should maintain an attitude of strict impartiality between religions and should not disqualify any applicant for custody or restrain any person having custody or visitation rights from taking the children to a particular church, except where there is a clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child." 489 P.2d at 1135.

The facts here justify the court's interference. Rabbi Weizenbaum in whose Sunday school Hal was enrolled testified:

" ... one doesn't raise a child to be both a Christian and a Jew at the same time. I don't think this is a healthy approach to raising a child. I would tell anybody that, because the reasoning is the same for anybody. I would never recommend that approach.

\* \* \* \* \* \*

I don't think that it is a good policy to raise a child to be one thing, and to send him to a school which teaches him to be something else. I think that is to create conflict, which is not healthy for the child...."

Dr. Burkholder, a child psychologist who had been counseling Hal, testified that because of the differences in religions it would be confusing for any child to try to consolidate in his mind two different concepts and would cause long-term confusion and a decision-making problem. She also testified that Hal is having an anxiety problem which he tries very hard not to show but that the anxiety has manifested itself in a psychosomatic problem, soiling his pants (encopresis). This problem and his tension and anxiety ceased when, due to a stipulation of the parties pending determination of the order to show cause, Hal ceased going to the Jewish Sunday school. As a result of being put in the middle of the relationship between his parents, his anxiety is manifested by the encopresis. He feels that he is a mediator and must please both parents, including pleasing them over the religious issue.

Hal's mother, appellee, has a doctoral degree in counseling and guidance with a minor in clinical psychology and a master's degree in school psychology, specializing in young children. She testified that the encopresis was a sign of anxiety and that Hal had been put in a double bind by having to please both parents over the religious issue. Since he stopped attending Jewish Sunday school, he appears less anxious and is far more open to talking with his mother about being in the middle between two religions. She believes that at his age, Hal should not be indoctrinated in the Jewish religion, but she has no objection to his attending Jewish services, the Jewish summer camp and celebrating Jewish holidays with his father and, when he is old enough, Hal can choose which religion he wants to follow.

■ As previously noted, the trial court took judicial notice of the findings previously made by Judge Sherrill and the evidence supports the conclusion that it was detrimental to the welfare of the child to allow him to be indoctrinated in the Jewish religion.

■ As for the court's order of the $100 fine, we could interpret this ruling as merely being the court's statement of what the fine would be if appellant willfully and wrongfully was late in returning the child. This would of course necessitate a determination whether such willful and wrongful conduct occurred. However, the order of the court could also be construed as meaning that if appellant returns Hal late from summer visitation, appellee need only go to court and file an affidavit so stating and appellee would be entitled to judgment. In order to prevent confusion, that part of the order is vacated.

■ Appellee has urged as a "cross issue" the fact that the trial court should have held appellant in contempt for returning Hal late from the 1984 summer visitation. Here appellee is not merely trying to uphold the decision of the court, rather she is trying to achieve further relief. Therefore the issue must have been raised by cross-appeal. No cross-appeal having been filed in this case, we shall not consider this issue.

Both parties have asked for attorney's fees in this case. In the exercise of our discretion we conclude that the parties should bear their own attorney's fees and costs.

That part of the order of April 30, 1985, which orders that for each day the child is returned late to petitioner from summer

vacation the respondent shall pay to petitioner the sum of $100 per day is vacated, and the rest of the order is affirmed.

FERNANDEZ and LACAGNINA, JJ., concur.