**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2156-18T2

LIDIA MONGAY SOLER,

     Plaintiff-Respondent,

v.

JEFFREY G. STARK,

     Defendant-Appellant.

_____

Submitted September 23, 2019 – Decided November 6, 2019

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1855-16.

Donahue, Hagan, Klein & Weisberg, LLC, attorneys for appellant (Debra Susan Weisberg, of counsel and on the briefs; Sandra H. Starr Uretsky, on the briefs).

Williams Law Group, LLC, attorneys for respondent (Allison C. Williams, of counsel and on the brief; Victoria Danielle Miranda, on the brief).

PER CURIAM

Defendant Jeffrey G. Stark appeals from a Family Part order granting his former wife, plaintiff Lidia Mongay Soler, parenting time with their three children on Easter Sundays commencing in 2020 and permitting plaintiff to "educate the children with her religious and moral values during her parenting time." Based on our review of the record in light of the applicable law, we affirm in part and reverse in part.

I.

Plaintiff and defendant married in 2007, and have three children: twins born in 2009, and their youngest child, born in 2013. Plaintiff and defendant divorced in 2016. Their dual judgment of divorce incorporates a marital settlement agreement (MSA) and a co-parenting agreement. The MSA provides that the agreement represents "the entire understanding of the parties and [that] there are no representations, warranties, covenants or undertakings other than those expressly set forth" in the agreement. It further declares that "[t]he parties have different cultural and religious backgrounds," and "any unresolved issues regarding the cultural and religious upbringing of the children" will first be submitted for resolution in mediation and, if mediation is not successful, the parties may "seek court intervention."

2

The co-parenting agreement designates plaintiff as the parent of primary residence and defendant as the parent of alternative residence but provides the "designation[s] [are] not intended to confer on one parent any additional legal rights" beyond authorizing plaintiff to determine the schools the children will attend. The agreement grants the parties "equal input and decision making rights as to all matters of importance concerning the health, education and welfare of the children" and states that "[n]either party shall have the right to make a unilateral decision as to such matters." The co-parenting agreement provides that the parties shall submit unresolved disputes concerning "substantive issue[s] concerning the children" to a mediator, then to legal counsel and, if the issue[s] remain unresolved, to the courts.

Following their divorce, the parties disagreed about the religious upbringing of their children. Plaintiff is Catholic and defendant is Jewish. Defendant argues that plaintiff agreed to raise the children in a Jewish home and in the Jewish faith. He asserts plaintiff took a course on Judaism prior to their marriage, attended synagogue services with the children during the marriage, allowed the children to participate in the rituals required for their conversion to the Jewish faith, and signed a "Declaration of Commitment" following the birth of the twins to raise them in the Jewish faith. Defendant further asserts that

prior to the parties' separation in 2014, their youngest child was circumcised during a Jewish ceremony and given his Hebrew name, but he had not yet completed his conversion to the Jewish faith.

Plaintiff claims she "never agreed to having a strictly Jewish home or raising [the] children in only the Jewish faith," "did not agree to send them to Hebrew school," and "always maintained [her] Catholic faith and beliefs." Plaintiff asserts she "attempted to learn and understand Judaism" based on her respect for defendant's culture and religion, and that she acceded to the children's involvement in Jewish religious rituals during the marriage due to pressure from defendant. Plaintiff certified that she "always assumed [the] children would be brought up to learn both sides of their faith—Catholicism and [Judaism], and never intended that they would only be brought up in the Jewish faith." Plaintiff claims defendant interfered with her efforts to expose the children to her religious beliefs, practices and rituals during the marriage, and continued to do so following the parties' separation and divorce.

In 2018, defendant moved in part for an order permitting the youngest child's final conversion to the Jewish faith, allowing the enrollment of the twins[1]

---

[1] Defendant's notice of motion stated he moved for an order permitting one of the twins and the youngest child's enrollment in Hebrew school and allowing the

in Hebrew school, permitting the youngest child's enrollment in Hebrew school "when he is of age," requiring plaintiff to transport the children to Hebrew school during her weekend parenting time, and restraining plaintiff from making any derogatory statements concerning "the religious beliefs or practices of Judaism." Plaintiff opposed the motion and filed a cross-motion seeking an order for "[e]nforce[ment of] the MSA reflecting that the children should be exposed to both cultures and religions of both parties."

Plaintiff also cross-moved for an order requiring that the children spend Easter Sunday with her each year. The MSA provides that "[t]he children shall spend the entire Easter break with" defendant, but that plaintiff "shall have parenting time with the children on Easter Sunday" if defendant "does not travel" on that day. In support of her cross-motion, plaintiff alleged defendant violated the MSA by taking the children to a local amusement park on Easter Sunday in 2018 and denied her right to parenting time by claiming he was "traveling" with the children on that day.

---

other twin's enrollment "when he is of age." Based on defendant's supporting certification, we conclude the first reference to the youngest child in the notice of motion is in error, and that defendant moved for an order permitting the twins' enrollment in 2018 and the youngest child's enrollment later, "when he is of age."

The court heard argument on the motions and entered an order granting defendant's request to allow the youngest child's conversion to the Jewish faith and allowing defendant to take the children to Hebrew school during his parenting time. The court denied defendant's motion to require that plaintiff take the children to Hebrew school during her parenting time. The order granted plaintiff's requests for parenting time each Easter Sunday commencing in 2020 and that she may educate the children with her religious and moral values during her parenting time.

Defendant appealed from the court's order and plaintiff cross-appealed. Plaintiff subsequently withdrew her cross-appeal and thus does not contest the court's order permitting the youngest child to complete his conversion to Judaism and allowing defendant to take the children to Hebrew school during his parenting time. We therefore limit our discussion to defendant's appeal of the court's order granting plaintiff parenting time on each Easter Sunday commencing in 2020 and allowing plaintiff to educate the children regarding her religious and moral values during her parenting time.

II.

We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super.

6

457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Therefore, a Family Part judge's findings are binding so long as his or her determinations are "supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 412. We reverse only if there is "'a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). "However, when reviewing legal conclusions, our obligation is different; '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'" Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

We first address defendant's challenge to the court's order permitting plaintiff to educate the children concerning "her religious and moral values during her parenting" time. Defendant contends plaintiff agreed during the marriage to raise the children in the Jewish faith and refrain from practicing other religions, and the court erred by failing to give effect to that agreement by entering an order allowing plaintiff to educate the children about her religious and moral values during her parenting time. Plaintiff disputes there was any agreement during the marriage to raise the children solely in the Jewish religion

and asserts the MSA and co-parenting agreement left open the issue of the children's religious upbringing. Plaintiff claims the court cannot properly interfere with her parental and constitutional rights to educate the children about her religious beliefs.

Where divorced parents disagree over the religious upbringing of their children, the courts may neither "choose between religions" nor "prevent exposure to competing and pulling religious ideas and rituals." Asch v. Asch, 164 N.J. Super. 499, 505 (App. Div. 1978). Children are entitled to "have the opportunity to participate in the cultural household routine and religious practices of both parents," "may be well served by a broadening multi-cultural experience[, and] can only be hurt by a fractious inter-cultural contest." McCown v. McCown, 277 N.J. Super. 213, 219-20 (App. Div. 1994).

"[T]he court[s] should seek to advance the best interests of the child[ren] where [their] parents are unable to agree on the course to be followed." Asch, 164 N.J. Super. at 505. To achieve that result, our courts have "establish[ed] secular rules to minimize the conflicting pressures placed on the children and permit them to steer a course between the conflicting views and beliefs of their parents." McCown, 277 N.J. Super. at 219. The rules ensure that court decisions governing the religious upbringing of divorced parents' children neither violate

the "children's constitutional right to religious freedom nor permit the imposition" of conditions upon the parents violating their "constitutional right of freedom of religion." Brown v. Szakal, 212 N.J. Super. 136, 139-40 (Ch. Div. 1986).

Where parents lack a contractual agreement to the contrary, the custodial parent has the authority to control the children's religious upbringing. Feldman v. Feldman, 378 N.J. Super. 83, 91 (App. Div. 2005); see also Esposito v. Esposito, 41 N.J. 143, 146 (1963); Brown, 212 N.J. Super. at 140; Wojnarowicz v. Wojnarowicz, 48 N.J. Super. 349, 354 (Ch. Div. 1958). However, although the custodial parent's right to control the religious upbringing of his or her children takes precedence, a court cannot issue an order that unduly limits the secondary caretaker's religious freedom. Brown, 212 N.J. Super. at 139-40. Thus, a court cannot require that a parent of secondary residence "affirmatively participate in a religion, not their own," Feldman, 378 N.J. Super. at 97, or "prohibit [that parent] from taking [his or] her children to religious services of [his or] her choice during [his or] her" parenting time, id. at 96. A court may protect "the primary caretaker's right to raise and educate his [or her] children in his [or her] chosen religion" by "prevent[ing] others from simultaneously

9

educating the same children in an alternate religion," provided that prevention of simultaneous education is in "the best interests of the children."  Ibid.

Here, the MSA and co-parenting agreement do not make provision for the religious upbringing of their children.  They include only an acknowledgement "[t]he parties have different cultural and religious backgrounds," and an agreement that "any unresolved issues regarding the cultural and religious upbringing of the children" shall be resolved through a defined procedure.  The co-parenting agreement designates plaintiff as the parent of primary residence, but the parties expressly agreed the designation does not grant plaintiff any authority beyond the ability to identify the schools the children will attend.

Based on the co-parenting agreement's terms, we do not find its designation of plaintiff as the parent of primary residence alone vests her with the authority to decide the religious upbringing of the children, see Feldman, 378 N.J. Super. at 91, and the record is otherwise bereft of evidence permitting a determination that plaintiff qualifies as the custodial parent entitled to make that decision, see, e.g., Holst-Knudsen v. Mikisch, 424 N.J. Super. 590, 596-97 (App. Div. 2012) (explaining our Supreme Court has "defined the term 'custodial parent' as 'the parent primarily charged with making custodial decisions in the child's best interest,' or alternatively, as the parent 'who exercises physical

custody or sole legal custody'" (citations omitted)). In addition, plaintiff does not challenge the court's order permitting the completion of the youngest child's conversion to Judaism and allowing the children to attend Hebrew school. Thus, plaintiff does not object to the children's religious education in Judaism, does not claim the education is inimical to the children's best interests, and does not seek, as the putative custodial parent, to prevent their continuing education in Judaism. See Feldman, 378 N.J. Super. at 96.

Defendant does not contend he is entitled to control the religious upbringing of the children based on any claim he is the custodial parent. Rather, he concedes that "neither [p]laintiff nor [d]efendant is afforded greater authority over the other respecting the religious upbringing of the children." Defendant argues that because the parties made clear plaintiff's designation as the parent of primary residence does not vest her with any authority beyond selecting the children's schools, the court was required to consider "evidence reflecting the parties' agreement and expectation as to the religious upbringing of the children." Defendant claims the evidence, which plaintiff disputes, establishes the parties agreed the children would be raised in the Jewish faith and that plaintiff is bound by the agreement.

11

The record does not permit a resolution of the parties' conflicting factual assertions concerning the purported agreement, and the court did not conduct a plenary hearing or make any factual findings concerning defendant's claim the parties agreed to raise the children in the Jewish faith. As such, we cannot determine whether the parties had an agreement and, if so, what were its terms. See, e.g., J.G. v. J.H., 457 N.J. Super. 365, 372 (App. Div. 2019) (finding a plenary hearing is required where parents "make materially conflicting representations of fact"). Nor can we determine if the putative agreement is unenforceable based on plaintiff's claim she was pressured into allowing the children to participate in Jewish rituals or based on any other legal or factual defenses. It is not our role to make factual determinations in the first instance. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) (explaining "appellate court[s] should exercise . . . original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter").

In any event, for purposes of our consideration of that portion of the order allowing plaintiff to educate the children with her religious and moral values during her parenting time, it is unnecessary to determine if the parties agreed to raise the children in the Jewish faith. Plaintiff was at all times free to exercise

her own religious beliefs, and defendant does not argue otherwise. As such, regardless of any purported agreement to raise the children in the Jewish faith, the court could not bar plaintiff from exercising her religious beliefs by prohibiting her from educating the children concerning her religious and moral values during her parenting time. See Feldman, 378 N.J. Super. at 96. If the court had ruled otherwise, it would have impermissibly and unconstitutionally violated plaintiff's constitutional right to freedom of religion. Brown, 212 N.J. Super. at 139-40. We therefore affirm the court's order allowing plaintiff to educate her children about her religious and moral values during her parenting time.[2]

Defendant also claims the court erred by ordering that plaintiff shall have parenting time with the children on each Easter Sunday commencing in 2020. Defendant argues the court impermissibly modified the parties' co-parenting

---

[2] We do not address issues that were not before the court and for which there is an inadequate record. For example, and as noted, we do not address or decide whether the parties agreed to raise the children in the Jewish faith and, if so, how that purported agreement might affect the nature and scope of plaintiff's and defendant's respective authority to decide the religious upbringing of the children. We also do not decide whether either party enjoys the "right to raise and educate [the] children in his [or her] chosen religion [and] prevent others from simultaneously educating the same children in an alternate religion." Feldman, 378 N.J. Super. at 96. We address only the order challenged on appeal, which is limited in scope and properly permits plaintiff to share her religious and moral values with her children during her parenting time.

agreement without requiring that plaintiff demonstrate any changed circumstances warranting such relief. Plaintiff contends the court properly ordered that she have parenting time with the children each Easter Sunday because defendant violated the terms of the co-parenting agreement by denying her parenting time on Easter Sunday in 2018.

The parties do not dispute that the co-parenting agreement addresses Easter Sunday parenting time. More particularly, the parties agreed "[t]he children shall spend the entire Easter break with" defendant and that plaintiff "shall have parenting time . . . on Easter Sunday" only if defendant "does not travel" with the children on that day. Plaintiff requested that the court award her parenting time each Easter Sunday based on a singular claim that defendant violated the co-parenting agreement on Easter Sunday in 2018.

"[I]n matrimonial matters . . . settlement agreements, being 'essentially consensual and voluntary in character[,] . . . [are] entitled to considerable weight with respect to their validity and enforceability' in equity, as long as they are fair and just." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (alterations in original) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). Absent fraud or coercion, a court is obligated to enforce the terms of the settlement agreement when entered into by "fully informed" parties. Avelino-

A-2156-18T2

Catabran v. Catabran, 445 N.J. Super. 574, 590 (App. Div. 2016); see also Quinn v. Quinn, 225 N.J. 34, 55 (2016).

A party seeking modification of an existing custody or parenting time order must demonstrate changed circumstances and that the arrangement is no longer in the best interests of the child. Finamore v. Aronson, 382 N.J. Super. 514, 522-23 (App. Div. 2006). The issue is "two-fold and sequential." Faucett v. Vasquez, 411 N.J. Super. 108, 127 (App. Div. 2009). A party seeking modification must show a change in circumstances that affects the welfare of the children, and if the party makes such a showing, "the party is 'entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order.'" Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K. v. F.K., 437 N.J. Super. 58, 62-63 (App. Div. 2014) (citation omitted)).

Here, the court modified the parties' Easter Sunday parenting time agreement by granting plaintiff's request for parenting time on each Easter Sunday commencing in 2020. The court did so without finding that any changed circumstances supported plaintiff's request, without conducting a hearing to determine if the modification requested by plaintiff was in the children's best interests, and without making any findings of fact or conclusions of law. We do

not find, however, that plaintiff's allegation defendant violated the co-parenting agreement by denying her parenting time on Easter Sunday on a single occasion in 2018 constitutes a sufficient change in circumstances affecting the children's best interests warranting either a plenary hearing or a modification of the co-parenting agreement.

Plaintiff failed to establish the alleged single violation of the co-parenting agreement constitutes a change in circumstances that renders the continued enforcement of the agreed upon Easter break parenting time arrangement unfair, unjust, or inequitable, or not in the children's best interest. See Konzelman v. Konzelman, 158 N.J. 185, 194 (1999). Plaintiff failed to sustain her burden of demonstrating changed circumstances permitting a modification of the parties' co-parenting agreement. We therefore reverse that portion of the court's order directing that plaintiff have parenting time with the children every Easter Sunday commencing in 2020. Parenting time on Easter Sunday shall continue under the terms to which the parties mutually consented in the co-parenting agreement.[3]

---

[3] However, the trial court retains the authority to grant plaintiff compensatory time with the children, among other remedies, for a violation of the parenting time order by defendant. R. 5:3-7(a)(1). That might include granting plaintiff parenting time on another Easter Sunday, regardless of defendant's travel plans.

A-2156-18T2

Affirmed in part and reversed in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2156-18T2