490 So.2d 1017 (1986)
Judy ROGERS, Appellant,
v.
Cecil O. "Bill" ROGERS, Appellee.
No. BJ-448.
District Court of Appeal of Florida, First District.
June 18, 1986.
Charles J. Kahn, Jr. and David H. Levin of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
C. Thomas Holland, Crestview, for appellee.
ERVIN, Judge.
Appellant, mother, appeals from the trial court's award of custody to her of the minor children, provided that she sever all her connections with an organization known as The Way International (Way). She argues that the condition imposed impermissibly interferes with the right to her free exercise of religion, as guaranteed by the First and Fourteenth Amendments to the United States Constitution. We agree to reverse and remand.
Following appellee's (the husband's) amended petition for dissolution of marriage, a hearing was held involving the sole issue of parental custody of the two minor children. The husband alleged that a religious organization known as The Way International had psychologically brainwashed his wife to the extent that she was physically and mentally incapable of taking proper care of the two children. He testified at the hearing that his wife had been a good mother until she became totally obsessed with The Way, with the result that instead of taking care of the children, his wife constantly listens to Way tapes and neglects the children. He called to the stand several witnesses, including Cynthia Kisser, an expert on mind control organizations, who testified that certain beliefs of The Way International  including the tenets of ridding oneself of illness through raising the level of spirituality, of satanic possession of certain people, the practice of speaking in tongues, and the rigorous physical discipline of the children  have a detrimental effect on the ability of parents to raise properly their children. Doctor Valentine, a child psychologist, testified specifically as to the adverse influence The Way had on appellant's effectiveness in raising her children.
Appellant's witnesses generally testified to the contrary  that The Way did not interfere with the mother's ability to be a good mother to her children. Appellant testified that she had become acquainted with the teachings of The Way 13 years before and described it as a biblical research *1018 and teaching ministry. Although she admitted that she was very much involved with the organization, appellant affirmed that she had always given priority to the welfare of her children. Doctor Winslett, a clinical psychologist, determined, after administering an examination of appellant, that she was a stable and responsible individual and he would not hesitate to recommend her as being a suitable custodial parent. Doctor Winslett was aware of appellant's claim of speaking in tongues and noted that this was an accepted practice among many conservative Christian religions, including The Way International.
After concluding that The Way International would be detrimental to the mother and the continued welfare of the minor children, the trial judge ordered:
[T]he primary physical residence of the children shall be with ... [the mother] ... provided that... [the mother] severs all connections with the organization known as The Way International. This severance must include any meetings, tapes, visits, telephone or written communications, or financial support between the ... [mother] and The Way Internationl [sic].
This injunction shall also prohibit ... [the mother] from subjecting the children of this marriage in any manner whatsoever to any of the dogmas of The Way International.
(e.s.) We conclude that the above condition imposed upon the award of primary residential child custody to the mother constitutes an unconstitutional infringement upon her free exercise of religion.
It is generally well-recognized in Florida that the controlling consideration in a custody determination is the best interests of the child. Section 61.13(3), Florida Statutes, provides that the court shall consider and evaluate all factors affecting the welfare of the child, including but not limited to:
(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
(b) The love, affection, and other emotional ties existing between the parents and the child.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home.
(f) The moral fitness of the parents.
(g) The mental and physical health of the parents.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(j) Any other factor considered by the court to be relevant to a particular child custody dispute.

(e.s.) We construe Section 61.13(3), Florida Statutes, to permit the trial court to consider a parent's religious beliefs or values as one of several factors aiding in its child custody determination.[1] The crucial issue at bar, however, is whether a trial court may condition the award of custody upon the curtailment of a parent's religious activities or beliefs. Finding no direct authority in Florida on this issue, we follow the Alabama Supreme Court in Hilley v. Hilley, 405 So.2d 708 (Ala. 1981), which has previously directly addressed the point of *1019 law now on review. In Hilley, the trial court awarded custody of the minor child to the wife, an evangelist and church choir member, on the condition that she restrict her engagement in certain church activities. In reversing, the Alabama Supreme Court pointed out that while a trial court may consider a parent's religious beliefs and practices as a factor in a custody determination, the conditioning of an award of custody upon the restriction of the parent's right to free exercise of religion is an impermissible infringement on religious freedom. We adopt the holding in Hilley.
Although a trial court may consider religion as a factor in a custody determination, it may not additionally condition the award of custody upon the parent's curtailment of his or her religious activities or beliefs. We conclude that the condition at bar is unconstitutionally overbroad in that it expressly restricts appellant's free exercise of her religious beliefs and practices. In that we reverse and remand as to this issue, we find it unnecessary to address the remaining issue raised on appeal.
Reversed and remanded.
JOANOS, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting.
I agree with the majority that a trial court may consider a parent's religious activities as a factor in a custody determination. But unlike the majority, I would further conclude that in an appropriate instance custody may be provisionally established, conditioned upon the parent's further conduct including factors such as religious activities. To rule otherwise while permitting consideration of such activities does not further religious freedom, but merely elevates form over substance in custody orders and necessitates an unwarranted recourse to the modification process.
NOTES
[1] Other states hold that religious beliefs and practices may be considered as a factor in the custody award. See In re Hadeen, 27 Wash. App. 566, 619 P.2d 374 (1980); Clift v. Clift, 346 So.2d 429 (Ala. Civ. App.), cert. denied, 346 So.2d 439 (Ala. 1977).