527 So.2d 820 (1987)
Rita L. MENDEZ, Appellant,
v.
Ignacio N. MENDEZ, Appellee.
No. 85-2807.
District Court of Appeal of Florida, Third District.
April 28, 1987.
On Motion for Rehearing and Rehearing Denied November 10, 1987.
Certiorari Denied March 7, 1988.
Frumkes & Greene and Cynthia L. Greene, Miami, for appellant.
Maurice Jay Kutner, Miami, for appellee.
Robin H. Greene and Steven Forester, Miami, for American Civil Liberties Union Foundation of Florida, as amicus curiae.
Before HUBBART, BASKIN and DANIEL S. PEARSON, JJ.
On Motion for Rehearing and Rehearing En banc Denied November 10, 1987.
Certiorari Denied March 7, 1988. See 108 S.Ct. 1122.
PER CURIAM.
The record in this case does not support the appellant's contention that the trial court made the father the primary residential parent of the parties' minor child solely because the mother is a practicing Jehovah's Witness. Instead, the record reflects that the trial court, after considering the testimony of numerous experts, the parties and their relatives and friends, and a guardian ad litem appointed to represent the minor, considered, as it had a right to do, Rogers v. Rogers, 490 So.2d 1017 (Fla. 1st DCA 1986), the effect on the child caused by the conflicting religious beliefs of the parents and, in ruling, conscientiously avoided any interference with the right of the non-custodial parent to practice her religion and avoided the imposition on her of an obligation to enforce the religious beliefs of the father. Although the evidence is in conflict on the issue of whether the best interests of the child would be better served with the father or with the mother as primary residential parent, there is more than ample competent evidence to support the decision of the trial court in placing that responsibility upon the father and giving extensive visitation rights to the mother.
Affirmed.
BASKIN, Judge (dissenting).
Agreeing with the expert witnesses that shared parental responsibility would be detrimental to the child, the trial court declared the father the primary residential parent. In my view, the trial court's selection of the father constituted an abuse of discretion. All three of the expert witnesses, two psychologists and one psychiatrist, concluded that the child belongs with the *821 mother; one psychologist described a home with the father and the paternal grandmother as inferior to a home with the mother in the same way that "an artificial heart [compares] with a real, healthy heart." The expert witnesses observed that a "very safe, a very lovable [sic], healthy attachment" exists between the child and her mother, the "prime parent figure"; on the other hand, the father's work requires him to travel out of the city, curtailing his ability to provide the "day in and day out caring and attentiveness that ... exists between [the child] and her mother." The court-appointed guardian ad litem shared the experts' views and was of the opinion that the child would be devastated if she were compelled to cease living with her mother.
The experts agreed, however, that contact with the mother's Jehovah's Witness religion is not in the best interest of the child, who needs "to adapt herself to the mainstream of culture." They stated that a Catholic upbringing "would allow her to adapt to society and have the freedom that Catholic children have in the society... ." In response, the mother testified that she would comply with a court order permitting the father to make all decisions regarding the child's religious education and medical welfare; she merely wished to read bible stories to her daughter and to explain her own beliefs when the child was mature enough to understand them. She testified:
I know my husband does not agree with all of these things and, of course, my daughter can do a lot of things I would not do; but, that does not mean she cannot do them. She can do them, if my husband allows her to do those things, like saluting the flag and all of those things. My husband allows her and she can do it, but I would explain to her the reason why I don't do it, when she is old enough to understand. I would not want to confuse her or anything like that.
Nevertheless, with neither a finding that the best interests of the child require such a result, nor an explanation for rejecting the favored parent, the court ruled the father primary residential parent and precluded the mother from exposing the child to any religious practices, teachings, or events in any way inconsistent with the Catholic religion.
My finding that the trial court abused its discretion is based on a review of the record and its disclosure that the child, exposed to the religious views of both parents for two years, showed no evidence of emotional or psychological harm. What does emerge from the record is a demonstration of the experts' personal biases against the mother's religion. Their disdain for the mother's religion induced them to speculate as to the possibility of harm to the child in the future even though no evidence of harm existed. The trial court was obviously persuaded by their less-than-objective considerations for removing the child from the custody of her natural mother, and its judgment should not stand. Palmore v. Sidoti, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984); Waites v. Waites, 567 S.W.2d 326, 333 (Mo. 1978) ("We hold that no judicial officer may determine child custody based on approval or disapproval of the beliefs, doctrine, or tenets of the religion of either parent or their interpretation thereof."); Smith v. Smith, 90 Ariz. 190, 367 P.2d 230, 233 (1961) ("A judgment supported only by the tenuous threads of a possible neuroses [sic] derived from deviation in normal activities will not withstand the thrust of constitutional guarantees."). This court should require the trial court to rest its determination on evidence of harm rather than mere speculation of harm to the child. See Felton v. Felton, 383 Mass. 232, 233, 418 N.E.2d 606, 607 (1981) ("[H]arm to the child from conflicting religious instructions or practices ... should not be simply assumed or surmised; it must be demonstrated in detail."); Munoz v. Munoz, 79 Wash.2d 810, 814, 489 P.2d 1133, 1135 (1971) ("[W]here the trial court does not follow the generally established rule of noninterference in religious matters in child custody cases without an affirmative showing of compelling reasons for such action ... [it] is tantamount to a manifest abuse of discretion."); In re Marriage of Hadeen, 27 Wash. App. 566, 579, *822 619 P.2d 374, 382 (1980) ("We hold that the requirement of a reasonable and substantial likelihood of immediate or future impairment best accommodates the general welfare of the child and the free exercise of religion by the parents.").
In the absence of a showing that the child's best interest requires the father to be made primary custodian, the trial court's decision is merely an expression of religious preference; its implementation of that view without adequate record support violates the mother's constitutional freedoms. I therefore decline to join the majority's affirmance. Under the facts of this case, I would reverse the trial court's custody determination and make the mother primary residential parent.
HUBBART and DANIEL S. PEARSON, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
The motion for rehearing is denied.
HUBBART and DANIEL S. PEARSON, JJ., concur.
BASKIN, J., dissents.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The motion for rehearing en banc is denied.
BARKDULL, HENDRY, HUBBART, NESBITT, DANIEL S. PEARSON and JORGENSON, JJ., concur.
DANIEL S. PEARSON, Judge, concurring in the denial of rehearing en banc.
If, as Judge Baskin's dissent suggests, the child custody issue in this case was decided on a preference for one religion over another, it is likely that we would all agree that the case would present a question of great public importance or a question of exceptional importance. But the child custody issue was not so decided, and, the rhetoric in the dissent aside, this case involves nothing more than the quite ordinary question of whether the trial court abused its discretion in resolving conflicting testimony unrelated to the religious practices of the parties about how the best interests of the child would be served.[1]
Although the denial of rehearing en banc reflects the considered conclusion that the trial court's decision was not based upon constitutionally impermissible grounds, it is worth observing that the mother never objected in the trial court to the evidence that she now says should not have been received and considered by the court; indeed, the mother was the very party who tried to make her religious practices the focal point of the dispute. The ordinary rules by which we operate  including one requiring that error be preserved for appellate review  are not suspended merely because the point on appeal is draped with the language of the First Amendment.
HUBBART, NESBITT and JORGENSON, JJ., concur.

ON MOTION FOR REHEARING EN BANC AND MOTION TO CERTIFY QUESTION
BASKIN, Judge (dissenting).
By denying en banc review and refusing to certify the question, Fla.R.App.P. 9.331, 9.030(a)(2)(A)(v), the court announces that this case does not present issues of either great public importance or of exceptional *823 importance. I disagree. In my view, religious issues permeated the trial and the majority's disregard of their importance does a disservice to the democratic system of jurisprudence.
Even though Dr. Greenbaum, Dr. Levy, Dr. Greenfield, and the guardian ad litem were all in agreement that the child should be with her mother, the experts advised the trial court to reject the mother as primary custodian and influenced the court to award custody to the father because, in their view, the mother's religion is considered by society as inferior to the father's religion. For example, during cross-examination, Dr. Levy stated:
A... . I believe that being raised a Jehovah's Witness would not be in the best interest of the child, given the fact that the principles, the way I understand them, do not fit in the western way of life in this society.
... .
The point I am making is that my recommendation, they can bring her up nonreligiously, but, where it comes to being raised as a Jehovah's Witness, I can see that becoming a block for her healthy development and healthy adaptation to this culture.
Q. You think it is unhealthy for a child to be a Jehovah's Witness in this culture?
A. I say it is unhealthy for this child to be raised as a Jehovah's Witness.
Q. Because she would not fit in the mainstream of society?
A. Yes.
No testimony contradicted the unanimous opinions of the doctors that the child should be with her mother, and no evidence demonstrated harm to the child from the parents' conflicting religious views. Thus, it is clear from the record that the mother's religious preference deprived her of her child.[1]
Not only is there no reasonable ground for denying the mother custody, the presence in the record of religious biases raises serious questions which should permit this case to receive further review. Comments such as those offered by the experts, that it is "unhealthy for a child to be raised as a Jehovah's Witness" and that she "should be rais[ed] ... in a religion that is part and parcel of the mainstream of society," should offend rather than persuade a court of law. See, e.g., Waites v. Waites, 567 S.W.2d 326 (Mo. 1978); Smith v. Smith, 90 Ariz. 190, 367 P.2d 230 (1961); Felton v. Felton, 383 Mass. 232, 418 N.E.2d 606 (1981); Munoz v. Munoz, 79 Wash.2d 810, 489 P.2d 1133 (1971); In re Marriage of Hadeen, 27 Wash. App. 566, 619 P.2d 374 (1980). The court's own statements in the final order reveal that despite its protestations to the contrary, the ultimate decision resulted from the court's negative view of the wife's religion rather than from an unbiased evaluation of the child's best interests.
Rogers v. Rogers, 490 So.2d 1017 (Fla. 1st DCA 1986), relied on by the majority, holds that religion may be considered a factor in determining custody; however, even the Rogers court expressly refused to approve restrictions on the free expression of religion. Nevertheless, the trial court in its Final Judgment penalized the mother for her religion and, in addition, ordered:
The Wife shall not expose or permit any other person to expose the minor child to any religious practices, attendances, teachings or events which are in any way inconsistent with the religious teachings and practices of the Catholic religion. Nor shall the Wife preclude the child from engaging in any activity which is permitted by the Catholic religion.
These restrictions highlight the trial court's disposition to favor the Catholic religion *824 and to discount expert testimony that the child belonged with her mother.
To be forced to choose between one's religion and one's child is repugnant to a society based on constitutional principles. The soft voice of the minority should be audible to a responsible court sensitive to constitutional rights which include the right to practice an unpopular religion. The trial court's curtailment of first amendment rights should compel the court to recognize the presence of issues of great public importance and grant en banc relief, or, at a minimum, certify the following question as one of great public importance:
Whether, and to what extent, may a trial court base its decision to award child custody on the religious beliefs and practices of one of the parents?
FERGUSON, J., concurs.
SCHWARTZ, Chief Judge (dissenting from denial of motion for rehearing en banc).
Without now adopting any conclusion on the merits, I believe that the record in this case presents a substantial question concerning the interplay between the best interests of the child in a custody case and a parent's religious practices of which the judge may personally disapprove or find distasteful. See Hausman, Religious Issues in Custody and Visitation: A Court's Dilemma, 1 Am.J.Fam.L. 325 (1987). The importance, indeed the constitutional necessity, of drawing an impenetrable line between the two factors in every case in which there is no demonstrable harm to the child,[1]Brown v. Szakal, 212 N.J.Super 136, 514 A.2d 81 (Ch. 1986); In re Marriage of Murga, 103 Cal. App.3d 498, 163 Cal. Rptr. 79 (1980); Quiner v. Quiner, 59 Cal. Rptr. 503 (Ct.App. 1967), and the real possibility, as indicated in Judge Baskin's opinions, that the line was improperly crossed below, render it clearly appropriate that this case be determined en banc as one of great public importance.
NOTES
[1] The record contains evidence, for example, that the child had difficulties beyond normal sibling rivalry with the mother's other child, an older stepbrother who resides with the mother; that the stepbrother may have been physically abusive towards the child; that the paternal grandmother was a good caretaker and the maternal grandmother was not; and that, to the child's detriment, the mother was absent from the house several nights each week.
[1] Surprisingly, Judge Pearson defends the majority view by asserting that appellant failed to preserve the issue under consideration; however, the original majority opinion was not based on a preservation question.

Mrs. Mendez preserved the issue. She complained that the trial court refused to hear testimony about Catholicism and the husband's nonconforming religious practices but entertained testimony critical of the Jehovah's Witness religion. The record demonstrates the trial court's limited focus and makes clear that the trial court decided custody, not on the parents' relative qualifications, but on their religious views.
[1] This view is contrary to Rogers v. Rogers, 490 So.2d 1017, 1018 (Fla. 1st DCA 1986), which, I think wrongly, states  without reference to an adverse impact upon the child  that "the trial court [may] consider a parent's religious beliefs or values as one of several factors aiding in its child custody determination." (footnote omitted) That Rogers was cited with apparent approval in the panel opinion here provides further basis for the belief that the case indeed involved the religious issue in the trial court and that it may have been reviewed and affirmed here upon what I would hold is an incorrect standard of law. In any event, the reliance on Rogers speaks to the importance of this court's determining en banc whether the panel opinion embodies a constitutionally sound rule in this vital area.