PER CURIAM.
Appellant, Ian A. Pierson (“the father”), appeals the trial court’s Amended Final Judgment of Dissolution, raising three issues on appeal. We affirm the amended judgment as to the challenged issues of parental timesharing and equitable distribution without further comment. However, we agree with the father that the trial court abused its discretion in granting Ap-pellee, Jennifer L. Pierson (“the mother”), ultimate authority over the children’s religious upbringing and in prohibiting the father from “doing anything in front of the children or around the children” that “conflicts with the Catholic religion.” We, therefore, reverse the amended judgment as to the religious restriction and remand.
The parties have three minor children who were born in 2003, 2005, and 2009. While the parties’ marriage was intact, the children were raised in the mother’s religion of Catholicism. The mother petitioned for the dissolution of her marriage to the father in 2012. During the parties’ separation, the father became a Jehovah’s Witness. As a result, one of the issues to be decided in the proceedings was the children’s religious training following the dissolution. During the hearing on the petition, the mother called Dr. Charlotte Chadik, the Director of Family Ministries of the mother’s church and a licensed psychotherapist. Dr. Chadik served as the “communication link” between church teachers and parents. When asked whether she was made aware of problems that the parties’ oldest son was having in Sunday School, she testified that the third grade Sunday School teacher reported to her about the child’s “behavior one day,” which included telling the teacher and students that the music they were listening to was wrong, that priests were bad, that he was going to grow up to be a Jehovah’s Witness minister, that the Bible they were using was wrong, and that there was no Heaven.[1] When asked during the hearing if she had an objection to the father exposing the children to his beliefs, the mother expressed her concern that it was “confusing” for the children.
In the amended judgment, the trial court noted Dr. Chadik’s testimony and found the “beginnings of a substantial emotional problem” in the parties’ oldest son, who was then nine years of age, as a result of “being immersed in and exposed to two religions simultaneously.” Based upon the “demonstrated harm,” the court ordered “shared parental responsibility” with the mother having the “ultimate” religious decision-making authority for the children. The court prohibited the father “from doing anything in front of the children or around the children that disparages or conflicts with the Catholic religion.” It also prohibited the mother from disparaging the father’s religious beliefs in front of the children. This appeal followed.
As explained by the United States Supreme Court, parents have the right to direct the religious upbringing of their children. Wisconsin v. Yoder, 406 U.S. *1203 205, 233, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Restrictions upon a noncustodial parent’s right to expose his or her child to his or her religious beliefs have consistently been overturned in the absence of a clear, affirmative showing that the religious activities at issue will be harmful to the child. Mesa v. Mesa, 652 So.2d 456, 457 (Fla. 4th DCA 1995). As explained by the Fourth District in Mesa, “[allowing a court to choose one parent’s religious beliefs and practices over another’s, in the absence of a clear showing of harm to the child, would violate the [F]irst [AJmendment [of the United States Constitution].” Id. In addressing the case before it, the Fourth District agreed with the mother that the trial court erred in prohibiting her from exposing her children to her church’s religious practices where the father presented no evidence that exposing the children to the practices was doing them any harm. Id.; see also Gerencser v. Mills, 4 So.3d 22, 24 n. 2 (Fla. 5th DCA 2009) (“Without a showing of harm to the children, the court should not infringe on either parent’s free exercise of his or her religious beliefs.”); Abbo v. Briskin, 660 So.2d 1157, 1158 (Fla. 4th DCA 1995) (reversing the trial court’s restriction that the mother “not interfere in the development of the child’s Jewish religious training and upbringing, nor should she actively influence the religious training of the child in any other direction, other than the Jewish faith” and noting that “[a]s with married parents who share diverse religious beliefs, the question of a child’s religion must be left to the parents even if they clash”).
In the present case, while Dr. Cha-dik testified about what she was told regarding the parties’ oldest son’s behavior in one Sunday School class, she did not testify in her capacity as a psychotherapist. There was no evidence presented that Dr. Chadik or any other professional ever spoke to or evaluated the child. Nor was there any evidence presented that the parties’ two younger children were harmed by their exposure to the father’s religious beliefs or activities. While the mother’s concern that exposure to two different religions could confuse the children may be reasonable, neither that concern nor the evidence presented below established the requisite showing of harm to grant the mother ultimate religious decision-making authority for the children and to restrict the father from “doing anything in front of the children or around the children that ... conflicts with the Catholic religion.”[2]
Case law from out-of-state jurisdictions supports our determination in this case. For instance, in Zummo v. Zummo, 394 Pa.Super. 30, 574 A.2d 1130, 1132 (1990), the appellate court held that an order prohibiting a father from taking his children to religious services that were “contrary to the Jewish faith” during periods of lawful custody or visitation violated his constitutional rights and was an abuse of discretion. The appellate court noted that parents who are married may have differing opinions on the issues of politics and religion and that intervention is permitted only upon a showing of a substantial risk of harm to a child. Id. at 1140. The court saw no reason to treat such disagreements between divorced parents differently and held that the requirement of a substantial threat of physical or mental harm to a child is applicable to proposed restrictions *1204 on a parent’s post-divorce parental rights regarding the religious upbringing. Id. at 1140-41; see also Felton v. Felton, 383 Mass. 232, 418 N.E.2d 606, 608 (1981) (reversing a restriction prohibiting the father from “giving his children any religious training or education which shall be in conflict or contrary with the religious training and beliefs of the custodial parent” because there was “clear error, for lack of foundation in the record, in the judge’s findings of a ‘deleterious effect’ on the children”); Munoz v. Munoz, 79 Wash.2d 810, 489 P.2d 1133, 1134 (1971) (reversing a restriction prohibiting the father from “taking the children to any Catholic Church services or to any instructional classes sponsored by the Catholic Church” where there was no affirmative showing that it would be detrimental to the children’s well-being to allow the father to take them to Catholic Church but only speculation that it was confusing to the parties’ six-year-old son).
In contrast to the foregoing cases, the Nebraska Supreme Court affirmed a restriction prohibiting the father, a Jehovah’s Witness, from “exposing or permitting any other person to expose his minor children to any religious practices or teachings inconsistent with the Catholic religion.” See LeDoux v. LeDoux, 234 Neb. 479, 452 N.W.2d 1, 2 (1990). In doing so, the court set out in detail the evidence presented by the children’s mother as to the negative effects on the children of being exposed to the father’s religion. Id. at 3-4. In affirming, the court found that a review of the record, which included testimony from a certified clinical psychologist who evaluated one of the children, disclosed no abuse of discretion on the trial court’s part given that there was ample evidence to conclude that the stress one of the children was experiencing, which was caused in part by his exposure to disparate religions, posed an immediate and substantial threat to his well-being. Id. at 5.
Unlike the situation in LeDoux, the only evidence in this case that was presented below in support of the religious restriction pertained to one incident involving one of the three children. Because the evidence did not establish the harm necessary to award the mother ultimate religious decision-making authority and to restrict the father from “doing anything” in front of or around the children that “conflicts” with the Catholic religion, we reverse the amended judgment accordingly.
AFFIRMED in part; REVERSED in part; and REMANDED.
LEWIS, C.J., BENTON and MARSTILLER, JJ., concur.

. The trial court allowed Dr. Chadik’s testimony notwithstanding the father’s hearsay objection based upon its determination that the father’s objection was not contemporaneous.

. We find no error in the trial court’s directive that neither parent disparage the other parent's religion in front of the children.