DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ELIZABETH STEINMAN,**
Appellant,

v.

**WAYNE S. STEINMAN,**
Appellee.

No. 4D15-4016

[May 11, 2016]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Howard K. Coates, Jr., Judge; L.T. Case No. 502011DR013202XXXXNB.

Amy D. Shield and Roger Levine of Amy D. Shield, P.A., Boca Raton, and Charles D. Jamieson of The Law Firm of Charles D. Jamieson, P.A., West Palm Beach, for appellant.

Wayne S. Steinman, Jupiter, pro se.

PER CURIAM.

Elizabeth Steinman (the mother) appeals an order finding her in contempt for making major decisions regarding her children's religious education contrary to a marital settlement agreement providing for joint decision-making with the children's father. Because the principal concern of Wayne Steinman (the father) was with the scheduling of afterschool care and there was no evidence the children are harmed by exposure to conservative or orthodox religious beliefs or practices, we reverse.

## Background

The parties, who are both Jewish, divorced in 2011. They have two minor children. The marital settlement agreement provided for shared parental responsibility and the parties agreed that major decisions regarding the welfare of the children, including religious upbringing, would be made jointly whenever possible.

In 2014, the father moved to hold the mother in contempt. He stated

that he had no objection to the mother sending the children to Chabad aftercare instead of aftercare at public school as long as she made arrangements to watch the children until 6:00 p.m. on Fridays.[1] However, he explained that Chabad aftercare ends early on Fridays, and he was thus forced to leave work early to get the children. A magistrate found the mother had not violated a court order and recommended denial of the father's motion. The trial court adopted the finding and recommendation.

In January 2015, the father again moved for contempt and to enforce the marital settlement agreement, complaining that the mother was unilaterally making major decisions regarding the children's religious practices and education. The motion alleged that she unilaterally enrolled the children in an Orthodox religious aftercare program and was following Orthodox Jewish law and customs without his input or agreement. He again alleged the aftercare program was causing him problems with his work schedule.

At the hearing on his motion, the father informed the court that although he believed it confused the children, he did not object to the mother raising the children in a different aspect of the religion or the children attending the Chabad aftercare on the days they were staying with the mother. His concern was with aftercare on his visitation days. His counsel noted that "[t]he issue is that it doesn't work for his schedule, where public school aftercare does. It's a timing issue. If the former wife can assist the former husband and pick the children up on his Fridays at 4:30, then he has no problem with it." Additionally, the father complained in general terms about the mother making decisions on her own and not discussing them with him. According to the father, they practiced Reform Judaism during the marriage and the children are confused by the more strict religious and cultural differences that affect daily life. The mother disagreed. She testified that the children had attended conservative and Orthodox temples during the marriage. Regarding aftercare, she agreed to pick up the children on Fridays to help with his schedule.

---

[1] Chabad is an international Jewish religious and social institution and organization that offers religious services as well as summer camp, preschool and aftercare programs including youth religious education. *See generally* CHABAD LUBAVITCH WORLD HEADQUARTERS, lubavitch.com (last visited Apr. 22, 2016). Chabad is considered to offer a more "orthodox" approach to Jewish religious practices and education "because it adheres to Jewish practice and observance within the guidelines of Talmudic law and its codifiers." *What Is Chabad? Frequently Asked Questions,* CHABAD.ORG, www.chabad.org/library/article_cdo/aid/776104/jewish/FAQ.htm (last visited Apr. 22, 2016).

The trial court granted the father's motion in part. The court, based on the magistrate's previous recommendation, did not find the mother in contempt for sending the children to Chabad aftercare, although it found that aftercare was an appropriate subject for shared parental responsibility. Based upon the father's position on Chabad, the court ordered that the children can attend Chabad aftercare as long as the parties can agree about picking up the children on Fridays.

However, the court found the mother in contempt for unilaterally changing the religion of the minor children. The order provided that the children will be raised under Reform Judaism unless the parties reach another agreement. The court explained that "Former Wife/Mother is free to practice any religious beliefs she wishes, but cannot unilaterally modify the children's beliefs and practices or have the children follow her beliefs and practices when they are residing with her."

On appeal, the mother argues that, because there is no evidence that the children are harmed by her faith, the contempt ruling impermissibly impinges on her own religious freedom.

**Analysis**

We have recognized that a trial court cannot "preclude the custodial parent of one religious faith from actively influencing the training of the child inconsistently with the different religious faith of the other parent, and require the custodial parent to raise the child in the other parent's faith and cooperate with the other parent in effecting the result." *Abbo v. Briskin*, 660 So. 2d 1157, 1158 (Fla. 4th DCA 1995). In *Mesa v. Mesa*, 652 So. 2d 456 (Fla. 4th DCA 1995), we explained that courts have consistently overturned restrictions preventing one parent from exposing a child to his or her religious beliefs and practices unless there is an affirmative showing that the religious activity is harmful to the child. "Allowing a court to choose one parent's religious beliefs and practices over another's, in the absence of a clear showing of harm to the child, would violate the first amendment." *Id.* at 457*; see also Pierson v. Pierson*, 143 So. 3d 1201, 1203 (Fla. 1st DCA 2014) (citing *Mesa* and concluding that evidence a child is confused about conflicting religious beliefs is not a sufficient showing of harm to interfere with a parent's religious freedom). Even if the parties agreed to raise the children in a particular religion, most legal authority is against enforcement of such agreements. *Sotnick v. Sotnick*, 650 So. 2d 157, 160 (Fla. 3d DCA 1995) (citing *Zummo v. Zummo*, 574 A.2d 1130, 1148 (Pa. Super. Ct. 1990)).

3

Here, the mother wants the children to attend Chabad a few days each week for religious education and the father stated at the hearing that he did not object to Chabad aftercare if the mother would accommodate his work schedule, with his counsel stating that arranging the pickup of the children on the Fridays on which the father has visitation "really is the issue." The mother offered to pick up the children each Friday, making this issue moot. Although the father raised a general objection to the mother making religious decisions affecting the children without his input, he did not show any harm to the children, nor did he express much concern about this. He alleged generally that the children were confused by the mother's more strict religious practices and differences in diet between their homes, but there was no affirmative evidence of harm that would allow the court to interfere with her religious practice or with the children's religious upbringing and/or exposure to religious tenets and practices.

## Conclusion

Accordingly, the contempt order is reversed in part. We vacate the portions of the order finding the mother in contempt for unilaterally making decisions regarding the children's religion, directing that the children will be raised under Reform Judaism unless the parties agree otherwise, directing that Orthodox Jewish activities be changed back to Reform Jewish activities, preventing the mother from having the children follow her beliefs and practices when they are with her, and requiring her to not engage in actions designed to modify the children's belief from Reform Judaism.

MAY, GERBER, and FORST, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***