IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

MICHAEL KOCH, Former
Husband,

      Appellant,

v.

EMILY A. KOCH, Former Wife,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-0478

Opinion filed December 5, 2016.

An appeal from the Circuit Court for Levy County.
Stanley H. Griffis, III, Judge.

Michael Koch, pro se, Appellant.

S. Scott Walker of Folds & Walker, LLC, Gainesville, for Appellee.

CORRECTED OPINION

BILBREY, J.

Appellant challenges the Partial Final Judgment of Dissolution of Marriage

and the subsequent Final Judgment on Parenting Plan and Timesharing, raising

thirteen issues.  We affirm the Partial Final Judgment of Dissolution of Marriage

without further comment. The Final Judgment on Parenting Plan and Timesharing is also affirmed, but we write to address Appellant's second asserted point of error — the trial court's prohibition of Appellant's discussion of "ANY religious matters during visitation with his children."

The free exercise of religious beliefs and practices is protected by the First Amendment to the United States Constitution and by article I of the Florida Constitution. In family law proceedings, a court may not restrict a post-dissolution parent's religious beliefs, no matter how unconventional. See Rogers v. Rogers, 490 So. 2d 1017, 1018 (Fla. 1st DCA 1986) (reversing condition of mother's primary residential custody that she sever ties with specific religious organization and refrain from subjecting the children to "any of the dogmas" of that organization). And, as noted in Pierson v. Pierson, 143 So. 3d 1201, 1203 (Fla. 1st DCA 2014), "[r]estrictions upon a noncustodial parent's right to expose his or her child to his or her religious beliefs have consistently been overturned in the absence of a clear, affirmative showing that the religious activities at issue will be harmful to the child."

However, because section 61.13(2)(c), Florida Statutes (2015) requires Florida courts to "determine all matters relating to parenting and time-sharing of each minor child of the parties in accordance with the best interests of the child," we agree with the Supreme Court of Kansas' observation that "consideration of

religiously motivated behavior with an impact on a child's welfare cannot be ignored." Harrison v. Tauheed, 292 Kan. 663, 683, 256 P. 3d 851, 863 (2011). This differentiation between religious beliefs and religiously motivated actions which affect the welfare of the child is consistent with the rule announced in Pierson and earlier, in Mesa v. Mesa, 652 So. 2d 456, 457 (Fla. 4th DCA 1995), that restrictions on a parent's "exposure" of his or her child to the parent's religious beliefs "have consistently been overturned in the absence of a clear, affirmative showing that the religious activities at issue will be harmful to the child." Pierson, 143 So. 3d at 1203 citing Mesa, 652 So. 2d at 457.

In this case, the record supports "a clear, affirmative showing" that Appellant's actions towards his children, which he adamantly believes are religiously motivated, have been harmful to the children. After one child suffered a psychotic episode which required hospitalization, and upon the former wife's request, Appellant left the marital residence in February of 2013. The children had resided exclusively with the former wife since that time. At the time of the bench trial, a temporary injunction against domestic violence directed towards Appellant was in place. At the conclusion of the trial, the court extended the temporary injunction for the next year. During the trial, the court heard the testimony of three professionals, all of whom had extensive counseling experience with the family over several years. All three professionals consistently testified that Appellant's

3

admonishments, threats of damnation, and demonization of the children's mother caused each of the three children anxiety and emotional distress severe enough to qualify as abuse. Mental health counselor, Alicia Pfahlor, was concerned enough by what she heard from one of the children that she reported suspected psychological abuse to the Department of Children and Families.[1]

Ms. Pfahlor testified that Appellant admitted to her that "he had been abusive to his wife and he had been abusive to his children. To me he said he had been a monster in his family." The court-appointed social investigator Dr. Linda Abeles, PhD., also testified that Appellant admitted to her that he had been abusive to his wife and children earlier in the marriage, but that he had experienced a religious "epiphany" and attempted to change his behavior towards his wife. Dr. Abeles stated that in her opinion, based on her counseling with Appellant and the other members of the family, that Appellant had not changed his behavior towards the children, that each of the children suffered from anxiety disorder, that Appellant was engaging in domestic violence against the mother and the children prior to his leaving the home, and that unsupervised parenting time with Appellant would not be in the children's best interest.

The trial court relied heavily on the testimony of marriage and family counselor Dr. Stephen Figley, PhD., who had a long history of counseling this

---

[1] The Department found no abuse, abandonment, or neglect, and took no action on the report.

family. In addition to his counseling qualifications, Dr. Figley had extensive theological training and was familiar with Appellant's religious beliefs. His testimony was consistent with the other testimony, that Appellant's extensive proselytizing of the children was used as leverage over them to persuade the former wife to reconcile with Appellant. Dr. Figley also testified that Appellant's harsh "admonishment" of the children had harmful effects upon them. Appellant readily admitted that he used Biblical verses as a "rod" to justify his severe punishments of the children and to control their behavior.

In an effort to allow Appellant to improve his interactions with the children, the trial court ordered supervised visitation for Appellant in the partial final judgment and ordered Appellant to continue counseling with Dr. Figley. The court held three review hearings after the partial final judgment and heard testimony from Dr. Figley about Appellant's progress. However, this effort was unsuccessful and Dr. Figley testified that Appellant adamantly refused any suggestion that Appellant change his aggressive communications with the children so as to improve his relationships with them.

After considering the testimony presented in both the bench trial and the review hearings, the trial court changed Appellant's supervised visitation to unsupervised visitation in the Final Judgment on Parenting Plan. Appellant's parenting time remained at two hours per week.

5

The testimony of the expert witnesses during the bench trial, and Dr. Figley's follow-up testimony in the third review hearing, constituted a "clear, affirmative showing that the religious activities at issue will be harmful to the child[ren]," as required under <u>Pierson</u> and the cases cited therein. The trial court explained its injunction of Appellant discussing religious matters with the children in its finding that "in this unique case, the Father's use and/or leverage of religious views has been abusive to the children as the Father has sought to pit religion against the children's Mother. A year's worth of pro bono and subsidized therapy has not changed his insight regarding his conduct." The record on appeal supports this finding. Under the particular circumstances of this case, the trial court's restriction on Appellant's discussion of "religious matters" during his parenting time did not exceed the court's discretionary authority or violate Appellant's rights. The welfare and best interests of the children must prevail. § 61.13(2)(c) & (3), Fla. Stat.

AFFIRMED.

ROBERTS, C.J. and WETHERELL, J., CONCUR.